DANIEL W. CRANDALL, Pro Se
18 Crossbow Rd, Garden Valley, Idaho 83622
Crandall10@frontier.com
Phone: 208-608-5017

# UNITED STATES DISTRICT COURT
# OF THE DISTRICT OF IDAHO

| | |
|---|---|
| Daniel W. Crandall ) | Civil Action No.: 10-0127-CV  REB |
| Plaintiff ) | COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT; BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING; PUNITIVE DAMAGES; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; AND DEMAND FOR JURY TRIAL |
| vs. ) | |
| Hartford Casualty Insurance Company, and Hartford Steam Boiler Inspection & Insurance Company ) | |
| Defendants | |

Daniel W. Crandall, pro se does hereby institute this action and demand for jury trial to secure indemnification for just damages, legal fees, and the other costs of this lawsuit against Defendants for the causes of action and other damages as set forth herein.

## NATURE OF THIS ACTION

Plaintiff brings this action as the legal assignee of claims from CatRisk.us, LLC, an Idaho limited liability Company, and it's previously owned subsidiary, Moore Support Services, Inc., an Idaho corporation (hereinafter referred to collectively as "CatRisk.us, LLC"). Plaintiff is the owner of CatRisk.us, LLC and ultimately beneficiary of its profit or loss from this small business.

This action arises out of a Defendants reckless disregard, egregious breach of contract and wanton breach of their covenant of good faith and fair dealing with their policyholder, CatRisk.us, LLC.

CatRisk.us, LLC was a small business engaged in the medical billing business, among other lawful business activities, which provided electronic medical billing services to small physician practices in several states. This service was done entirely over the internet via CatRisk.us, LLC extensive computer network technologies, which allowed it to communicate with its physicians, and their medical insurance and governmental claims payors, and patients.

Since CatRisk.us, LLC's operations and its revenues were totally dependent upon its ability to electronically process claims and communicate over the internet with its various clients on a 24/7 basis. In addition, it had a significant investment in its computer hardware, media, software and data stored and used by employees on the systems, which necessitated procurement of adequate and prudent insurance protection.

When selecting an insurer to insure the primary and critical risks, particularly surrounding the continuous functionality of this computer system, which if it failed, the business would be subject to catastrophic liabilities and business interruption. In addition, its physician clients would suffer from late collection of revenues from a time lag on billing payors and patients, if CatRisk.us, LLC could not continuously process claims on a daily basis.

Therefore, after searching the marketplace and upon advice of Defendants' agent, CatRisk.us, LLC purchased a "Special Multi-Flex Spectrum Policy" (hereinafter referred to as "the Policy") which was issued by Defendant HC effective on May 1, 2008. This policy was replete with abundant limits and specialty additional coverages specifically tailored to address CatRisk.us, LLC's specialized technology risk transfer needs. (See attached Exhibit "A"). This policy was underwritten in Defendant HC's special program known as the Technology and Software Service Providers program and with its all-encompassing property coverages, which included business interruption insurance arising from an *Equipment Breakdown Accident;*

therefore CatRisk.us, LLC's believed that its critical technology risk was transferred to Defendant HC.

CatRisk.us, LLC advertised to its clients that it had the safest and most reliable billing system available, and also communicated the fact that it was covered with a comprehensive insurance program, which was issued by a multi-billion insurer with real expertise in technology risk and technology claims management and mitigation in the remote instance that our system were to suffer an *Equipment Breakdown Accident,* among other insured all-risk perils.

On May 21, 2009, CatRisk.us, LLC suffered its first ever *Equipment Breakdown Accident* that resulted in the total loss of functionality of its computer system. In compliance with its obligations under the Policy, it took every reasonable action to expedite repairs and mitigate business interruption. It only took eight days to restore functionality and resume operations.

Defendants' professed expertise and capabilities were suddenly put to the test. What transpired from May 21, 2009 to the erroneous and frivolous denial of the claims on July 22, 2009 is a testament to just how badly a claim can canker when it is not routine, when it occurs just before a three day weekend, which leads to the on-call claims adjuster shuffle, which causes human nature's reticence to admit you made a mistake, which is a symptom of being so big the left hand fails to track with the right, and on and on the ripples go.

An old Indian proverb sums up this case well, which is "When two buffalos fight, it is the grass that suffers" (e.g. the Defendants being the elephants and CatRisk.us, LLC being the unfortunate grass).  In this case, the Defendants found a more formidable opponent in the knowledge of the Plaintiff – exceptionally capable of defeating their usual and customary tactics regarding claims payment avoidance by insurance double-talk. Therefore, the wagons were circled and general quarters were sounded. The result was the Defendants bad judgment begat

poor decisions as the complexity of the *Equipment Breakdown Accident* was totally overshadowed by the Defendants' own complex policy design and reinsurance intercession, which took at least a six or seven of their people too long to interpret and led to an indetermination of coverage, and then bad faith breach took root.

On July 10, 2009, I complained to defendant's agent in a letter that summarizes the state of the claim adjustment: *"I thank you and Jim for taking the time to go through the coverage with me on the phone yesterday. <u>None of the many claims adjusters with Hartford Casualty Company or Hartford Steam Boiler & Inspection Inc. Co. would volunteer to do so</u>. Both carriers' staffs seem fixated on denial from the get-go. Why, I do not know, as these claims are so germane to the business of computer technology services that to have so much confusion from insurers as large and sophisticated as these two, is shocking and indicates their technology services risk management program expertise and program coverages are illusionary. "*

Just a week or so prior to receiving a denial letter, the Defendants' senior claims person left a voice message with its agent, and he had finally admitted that Plaintiff's coverage analysis was correct; but his sound judgment fell victim to other voices 1) up the chain of command or 2) most likely, he was out voted in claims committee. He then not only reversed his findings without explanation, but then attempted to tell Plaintiff that "you misinterpreted my voice message". Clearly the claim file had become a career damaging millstone.

## **PLAINTIFF**

Daniel W. Crandall, (hereinafter referred to as "Plaintiff") is an Idaho resident whose residence is located at 18 Crossbow, Garden Valley (Boise County) Idaho 83622.

Plaintiff brings this action as the legal assignee of the claims from CatRisk.us, LLC, an Idaho Limited Liability Company, and it's previously wholly owned subsidiary, Moore Support Services, Inc., an Idaho corporation.

## DEFENDANTS

1. Hartford Casualty Insurance Company (hereinafter referred to as "HC") is a foreign insurer licensed under Idaho law for property and casualty insurances and is domiciled in Connecticut.

    a. HC is an operating subsidiary owned by The Hartford Group, a multi-billion dollar insurance enterprise, which is located at One Hartford Plaza., Hartford, CT 06115.

    b. The Hartford Group is one of the largest insurance companies based in the United States, with offices in the United States, Japan, the United Kingdom, Canada, Brazil and Ireland.

2. The Hartford Steam Boiler Inspection and Insurance Company (hereinafter referred to as "HSB") is one of the world's leading specialty insurers and reinsurers.

    a. HSB is a foreign insurer licensed under Idaho law for property and casualty insurances and is domiciled in the state of Connecticut and with its principal offices at One State Street, Hartford CT 06103.

    b. HSB is a global provider of equipment breakdown insurance products; other specialty insurance and reinsurance products; and inspection services and engineering consulting.

c. HSB Group, Inc., the parent company of HSB is owned by Munich Re Group of Munich, Germany, is a multi-billion dollar insurance enterprise and the world's largest reinsurer.

## JURISDICTION

The Federal Court has jurisdiction over this case based on the "diversity of citizenship" of the litigants, who are citizens of different states, and this cases involves demand for damages in excess of $75,000 in potential damages; therefore 28 U.S.C. § 1332 applies.

## FACTUAL ALLEGATIONS

1. That Plaintiff is a resident of Garden Valley (Boise County) Idaho.

2. Both Defendants are domiciled in the State of Connecticut, but are licensed by the State of Idaho and other jurisdictions to sell and service property insurance contracts.

3. That the incident and acts complained of herein occurred in the City of Boise, County of Ada, and State of Idaho.

4. That CatRisk.us, LLC purchased a "Special Multi-Flex Spectrum Policy" (hereinafter referred to as "the Policy") which was issued by Defendant HC effective on May 1, 2008. (See attached Exhibit "A")

5. That Moore Support Services, Inc., a wholly named subsidiary of CatRisk.us, LLC was an additional named insured under the Policy.

6. That the Policy covered CatRisk.us, LLC extensive *Equipment Breakdown Property* for, among other causes of loss, direct and ensuing loss and damage arising from an *Equipment Breakdown Accident*.

7. That CatRisk.us, LLC paid the premiums as required under the Policy and otherwise complied with policy terms in good faith.

8. That the Policy was in full force on May 21, 2009.

9. That on May 21, 2009, at approximately 1:00 a.m., CatRisk.us, LLC suffered a sudden and catastrophic *Equipment Breakdown Accident* to its *Equipment Breakdown Property*.

10. That CatRisk.us, LLC suffered direct and ensuing damage to its *Equipment Breakdown Property* (e.g. its integrated computer system), which resulted from an *Equipment Breakdown Accident* (e.g. a sudden and catastrophic *mechanical breakdown* of its computer systems).

11. That CatRisk.us, LLC immediately reported the *Equipment Breakdown Accident* to Defendant HC's claims hot-line in accordance with the Policy's terms and instructions.

12. That CatRisk.us, LLC restored its *Equipment Breakdown Property* functionality by hiring available computer service firms to work 24/7 to identify the problem and restore functionality.

13. That despite CatRisk.us, LLC taking all reasonable expediting actions, the restoration could not be completed until May 29, 2009.

14. That on June 3, 2009, CatRisk.us, LLC sent a letter setting forth its covered claims for losses and damages to Defendant HC.

15. That on July 21, 2009, CatRisk.us, LLC received a letter from the Defendant HC dated July 20, 2009 stating that they were "writing a coverage position letter" and "regretted the delay…"

16. That on July 22, 2009, CatRisk.us, LLC received a claim denial letter dated July 15, 2009 from the Defendant HC stating in relative part: *your claim will be closed without payment.* (see Exhibit "B")

## **BREACH OF CONTRACT**

17. Plaintiff adopts and incorporates by reference herein paragraphs 1 through 16 of their Complaint as set forth in full.

18. Defendants expressed and/or implied representation that it would in good faith, and thoroughly, investigate, adjust and promptly pay any valid claims CatRisk.us, LLC may make on the Policy, without having to sue, which was material to the formation of the contract of insurance with Defendants.

19. Plaintiff is informed and believes and thereon alleges the Defendants in acting or in failing to act, as alleged herein, Defendants owed a duty to indemnify CatRisk.us, LLC for, among other claims, an *Equipment Breakdown Accident* to *Equipment Breakdown Property* as defined under Defendants' contract of insurance.

20. Plaintiff is informed and believes and thereon alleges Defendants breached that duty by failing to:

   a. Adopt and implement reasonable standards for the prompt, thorough, and objective investigation of specialized and complex technology claims arising under the Policy based upon all available information and employ commercially available investigative technologies; and give as much consideration to the financial interests of CatRisk.us, LLC as it did to its own financial interests.

   b. Investigate CatRisk.us, LLC's claim with objectivity or conducting a reasonable investigation by:

      i. Fully inquiring into possible bases that might support the CatRisk.us, LLC's claim by giving due consideration to CatRisk.us, LLC's coverage position; and

   ii. Failure to disclose facts or theories supporting coverage, among which include several exceptions to exclusions that would grant coverage for *Equipment Breakdown Accident* to *Equipment Breakdown Property*.

 c. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear and failing to:

   i. Affirm or deny coverage of claims within a reasonable time;

   ii. Promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; and

   iii. To pay valid CatRisk.us, LLC's claims in adherence to the Policy terms and conditions.

21. Defendants are in breach of said contract of insurance and, as a result, plaintiffs have incurred monetary damages as aforesaid and Defendants are therefore liable for all such damages suffered by CatRisk.us, LLC.

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

22. Plaintiffs adopt and incorporate by reference herein paragraphs 1 through 62 of their Complaint as set forth in full.

23. That Idaho law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of Idaho.

24. Plaintiff is informed and believes and thereon alleges that the evidence and testimony will show that the Defendants engaged in a pattern of conduct of an egregious nature that created an untenable ill-will that worked to oppress and relentlessly fatigue CatRisk.us,

LLC's will and financial ability to prosecute its claims or exercise its rights under the Policy and Defendants therefore knew or should have known:

    a. That there was no reasonable basis for denying the claim and Defendants acted with reckless disregard for whether such a basis existed (e.g. the Defendants could have filed for adjudication of the causation and coverage controversies for safe harbor affirmation of their proffered basis for denying the claim; instead they acted with reckless disregard for whether such a basis really existed and betting that Plaintiff could not afford to prosecute a costly legal action and just give up).

    b. That they were obligated to pay the claim under the terms of the Policy as supported by evidence known to them.

25. Plaintiff is informed and believes and thereon alleges Defendants breached the implied covenant of good faith and fair dealing by:

    a. Failing to disclose its disorganized claims administration policy and delegation to its reinsurer; improperly delegating the investigation to its reinsurer and then mismanaging their claim and Equipment Breakdown investigation which caused an excessive delay that is repugnant to proper claims handling standards thus forcing CatRisk.us, LLC to be whip-sawed between the Defendants' respective claims personnel, leading to confusion on what to do, what coverage, and unnecessary delay; including a failure to recognize the scope of the damages or the urgency in the need for Defendants' quick and decisive actions to meet their Policy obligations to CatRisk.us, LLC and do their part not to exacerbate CatRisk.us, LLC's damages.

b. Not securing a timely coverage determination in conformance with industry expectations for a claim of this nature; including a continuous and oppressive disregard for CatRisk.us, LLC's valid "ordinary meaning" coverage interpretations, which clearly extinguished all Defendants fairly debatable coverage issues, which Defendants, motivated by ill-will, ego and self-interest in their file statistics, continuously ignored or maliciously mocked.

c. Reckless disregard for satisfying its legal burden to prove that there were valid coverage exclusion(s) applicable to the claim, which defeats coverage - prior to frivolously refusing to pay proceeds of a policy and thereby denying CatRisk.us, LLC's claims, (e.g. if coverage exists *but for* the application of an exclusion, the Defendants bear the burden of proving the applicability of such an exclusion); particularly egregious conduct in this regard was:

   i. Defendants' refusal to share its forensic consultant's (LWG) report of causation analysis, upon which Defendants rely to deny indemnity, which is akin to their policyholder expecting to get a claim covered without providing any proof other than "take my word for it".

   ii. Defendants' attempt to conceal the existence of <u>applicable exceptions</u> to *wear and tear*, and *inherent defect* exclusions from CatRisk.us, LLC's in its denial letter.

d. Admitting Plaintiff's coverage analysis was correct on a recorded phone message and then a few days later refusing to indemnify by issuing an improper and legally unsupportable denial with the knowledge that the language of the Policy pursuant to interpretation of a reasonable person was in favor of indemnity, exhaustively

proven by CatRisk.us, LLC - months before denial – therefore the same cannot be an honest mistake by claims personnel.

    e. A continuously arrogant and willful conduct that imparted a dishonest purpose clearly visible and understood by the common and reasonable person.

26. That Defendants either therefore intentionally or, in the alternative, acted with reckless disregard as set forth in detail herein, and as a direct and proximate result, plaintiffs have suffered monetary damages and will suffer monetary damages in the future in an amount not presently determinable but to be proven at the time of trial.

## NEGLIGENT MISREPRESENTATION

27. The Defendants performed the claims and loss mitigation management in a negligent manner that failed to meet the standards that they and their agents warranted and the Defendants advertise and Defendants did foresee or reasonably should have foreseen that such negligent misrepresentations would cause delay and other damages by depriving its policyholders from the benefit of the bargain for such critical services that a reasonable person would have been led to believe by Defendants' advertised standards would be done in an exceptional manner, which is what one expects when purchasing insurance contracts for complex technology risks and as such Defendants' are liable to Plaintiff for the resulting damages.

28. That on or about June 12, 2009, CatRisk.us, LLC received a form letter notice from Defendant HSB that informed CatRisk.us, LLC that it's "investigation was continuing" and assigned a new HSB identification number to the Defendant HC's claim; essentially hijacking the adjustment process.

    a. That upon representation from Defendant HC informed CatRisk.us, LLC that Defendant HSB reinsures Defendant HC for 100% of all physical loss or damage arising from *Equipment Breakdown Accident* to *Equipment Breakdown Property*.

    b. That Defendant HC delegated the investigation of the CatRisk.us, LLC claim to HSB.

    c. That this automatic transfer of Defendant HC's duties was not set forth in the Policy nor disclosed to CatRisk.us, LLC prior to this time.

    d. That given Defendant HSB's "special professional relationship" with HC's policyholder, CatRisk.us, LLC in as much as HSB conducted the claims investigation and is the ultimate risk-bearer (with HC acting only as the "fronting insurer" for the claims involving Equipment Breakdown Accident to Equipment Breakdown Property, among others), therefore Plaintiff names them as a co-Defendant even without privity to the reinsurance agreement.

29. Both Defendants failed to have or deploy any reasonable cooperative management plan for catastrophic claims. No reasonable plan to determine which company's claims adjuster would handle the Equipment Breakdown Accident claim was in place. Therefore the claim was bounced around between a multitude of Defendants' claims personnel wasting valuable time and exacerbating the damages e.g. apparently no adjuster wanted to work the holiday weekend.

30. That as a direct result of Defendants aforementioned failure, the necessary rapid response times to properly handle Equipment Breakdown Accident claims of the calamitous nature suffered by CatRisk.us, LLC was unreasonably delayed (e.g. to help mitigate damages and expedite critical decisions, which affords their policyholders their expertise and keep them in compliance with the unilateral policyholder duties set forth in their insurance contracts).

*31.* That as a result of the foregoing delay, Defendant HSB failed to even get a local claims adjuster assigned to the claim so as to enable them to *inspect the property and records proving the loss or damage* as set forth in the Policy "Duties in the event of Loss".

## PUNITIVE DAMAGES

The above described actions of defendants in breaching the contract were intentional, willful, abusive, done with gross recklessness, done in bad faith, done without reasonable basis and /or with gross negligence or recklessness. As such, defendants are liable to Plaintiff for punitive damages.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In the alternative, the actions of the Defendants were done in a negligent manner and Defendants did foresee or reasonably should have foreseen that such actions would cause great emotional distress, anxiety, inconvenience, and expenses and as such Defendants' are liable to Plaintiff for negligent infliction of emotional distress.

## PRAYER FOR RELIEF

BASED UPON THE FOREGOING, plaintiff prays for the following:

1. The court to assume jurisdiction of this case;
2. Relief in the form of actual general damages, plus interest, and litigation costs incurred as a pro se litigant;
3. Damages for emotional distress, anxiety, inconvenience, and expense from Defendants; and
4. Punitive Damages.

Wherefore, all damages considered, Plaintiff, Daniel W. Crandall, respectfully demand judgment against Hartford Casualty Insurance Company, and Hartford Steam Boiler Inspection & Insurance Company, the Defendants, as the court may determine, for compensatory damages in the amount equaling or exceeding $300,000, for punitive damages in the amount the jury shall determine as limited by law and Constitutional tests, and any further relief that this honorable court determines appropriate.

*[signature]*

DANIEL W. CRANDALL, Pro se
18 Crossbow Rd,
Garden Valley, Idaho 83622
208-608-5017

Dated this 9th day of March, 2010

**EXHIBITS ATTACHED**

**EXHIBIT A** – applicable property sections of the HC Policy

**EXHIBIT B** – Denial Explanation Letter from HC