**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| DANIEL W. CRANDALL, | Case No.: CV 10-00127-REB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| HARTFORD CASUALTY INSURANCE COMPANY, and HARTFORD STEAM BOILER INSPECTION & INSURANCE COMPANY, | (Docket No. 36) |
| Defendants. | |

Currently pending before the Court is Defendants' Motion for Summary Judgment (Docket No. 36). Having carefully reviewed the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

Plaintiff brings this lawsuit as the "legal assignee of claims" for CatRisk.us, LLC ("CatRisk"), an Idaho limited liability company providing electronic medical billing services to small physician practices in several states. *See* Pl.'s Compl., pp. 1-2 (Docket No. 1). CatRisk performed these services entirely over the internet, using computer network technologies to communicate with its medical, insurance, and governmental clients/subscribers. *See id.* at p. 2. To insure the risk of a computer system failure, CatRisk purchased a "Special Multi-Flex Spectrum Policy" (the "Policy") from Defendant Hartford Casualty Insurance Company ("Hartford Casualty"), effective on May 1, 2008. *See id.*

**MEMORANDUM DECISION AND ORDER - 1**

Plaintiff alleges that on May 21, 2009, CatRisk suffered a sudden and catastrophic mechanical breakdown, resulting in the total loss of computer functions. *See id*. at pp. 3 & 7. Functionality was restored eight days later and CatRisk was able to resume business operations. *See id*. Plaintiff reported the incident to CatRisk's insurer, Defendant Hartford Casualty, and, on June 3, 2009, Plaintiff submitted a formal claim for losses and damages. *See id*. at p. 7. In a July 15, 2009 letter, Defendant Hartford Casualty denied Plaintiff's claim. *See id*.

As a result of Defendant Hartford Casualty's denial of coverage, Plaintiff asserts the following claims: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) negligent misrepresentation; (4) punitive damages; and (5) negligent infliction of emotional distress. *See id*. at pp. 8-14. Plaintiff asserts these claims against both (1) Defendant Hartford Casualty and (2) Defendant Hartford Steam Boiler Inspection and Insurance Company ("Hartford Steam Boiler").[1]

Collectively, Defendants move for summary judgment, arguing, first, that Plaintiff's claims fail because CatRisk, as the named insured, is the real party in interest and that any assignment of CatRisk's claims to Plaintiff was invalid; second, that Plaintiff's claims for negligent infliction of emotional distress, lost compensation, and losses on investment in CatRisk should be dismissed because CatRisk, as the named insured, is incapable of holding such claims; third, that Plaintiff's remaining claims for damages are speculative, unrelated to any duties owed

---

[1] Plaintiff claims that Defendant Hartford Steam Boiler reinsured Defendant Hartford Casualty for 100% of CatRisk's alleged losses and that Defendant Hartford Casualty delegated the investigation of CatRisk's claim to Defendant Hartford Steam Boiler. *See* Pl.'s Compl., pp. 12-13 (Docket No. 1). Because Defendant Hartford Steam Boiler "conducted the claims investigation and is the ultimate risk-bearer," Plaintiff asserts that a "special professional relationship" between CatRisk and Defendant Hartford Steam Boiler exists to warrant naming Defendant Hartford Steam Boiler as a co-Defendant "even without privity to the reinsurance agreement." *See id*. at p. 13.

**MEMORANDUM DECISION AND ORDER - 2**

by Defendants, and amount to improper claims for prospective economic advantage; fourth, that Plaintiff's claim for punitive damages is procedurally defective; fifth, that Plaintiff's negligent misrepresentation claim is not recognized under Idaho law; and, finally, that Plaintiff's contract claims against Defendant Hartford Steam Boiler must be dismissed because Defendant Hartford Steam Boiler was not a party to the Policy at issue in this action. *See* Defs.' Mem. in Supp. of Mot. For Summ. J., p. 1 (Docket No. 36, Att. 1).

## II. <u>DISCUSSION</u>

**A.      Motion for Summary Judgment: Standard of Review**

Summary judgment is used "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but rather is "the principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

However, the evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party (*see id*. at 255) and the Court must not make credibility findings. *Id*.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**MEMORANDUM DECISION AND ORDER - 3**

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show "by [its] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). A statement in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389 n. 3 (9th Cir. 1995).

**B.      A Valid Assignment?  Plaintiff's Standing to Maintain CatRisk's Causes of Action**

Defendants preliminarily question CatRisk's purported assignment of its claims against Defendants Hartford Casualty and Hartford Steam Boiler to Plaintiff. Specifically, Defendants contend that (1) Plaintiff "cannot demonstrate that a valid assignment of the claims from CatRisk to [Plaintiff] ever actually occurred" and (2) even if the assignment was valid, it was done to "circumvent[ ] the well-established rule that a corporate entity may not represent itself *pro se*." *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 3 (Docket No. 36, Att. 1).

1.    <u>CatRisk's Assignment of Its Claims to Plaintiff</u>

Throughout his Complaint, Plaintiff identifies himself as "the legal assignee" of CatRisk's claims.  *See, e.g.*, Pl.'s Compl., pp. 1 & 5 (Docket No. 1).  However, Defendants question the legitimacy of any such assignment, claiming that "there exists no evidence that the assignment of a chose in action was completed and delivered from CatRisk to [Plaintiff]."  *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 4 (Docket No. 36, Att. 1).

Plaintiff does not dispute the need for CatRisk to formally assign its claims to Plaintiff in order for *Plaintiff* to proceed on CatRisk's behalf against Defendants – indeed, Plaintiff seems to suggest that a written assignment actually exists, but says that it could not be found.  *See* Pl.'s Opp. to Defs.' Mot. for Summ. J., p. 1 (Docket No. 46, Att. 1).  Regardless, Plaintiff indicates that CatRisk has since executed a resolution that ratified the previous assignment and authorized the execution and delivery of a replacement assignment.  *See id.* at pp. 1-2.  That "Resolution" states in relevant part that CatRisk resolves and consents to the following action:

- Ratify the previous absolute assignment of all claims, demands and causes of action of any kind whatsoever legally actionable under CatRisk's insurance contracts entered into with Daniel W. Crandall . . . following the occurrence of the May 21, 2009 equipment breakdown disaster, which prior assignment and resolution cannot be located in the current written records of the company.

- This absolute assignment extended to any and all claims, legally actionable under CatRisk's insurance contracts . . . .

- The previous assignment specifically granted any and all claims, which the undersigned has or may have against Hartford Casualty Insurance Company and Hartford Steam Boiler Inspection & Insurance Company, including breach of contract, bad faith, punitive damages, etc.

- The previous assignment was absolute in that the undersigned relinquished all interest and control in any cause of action whatsoever to the assignee who became therewith the real and legal party in interest; and

therefore assignee could in his own name and for his own benefit prosecute, collect, settle, compromise and grant releases on said claim as he in his sole discretion deems advisable.

- CatRisk . . . is hereby authorized to execute and deliver the replacement assignment to Daniel W. Crandall . . . .

*See* 3/16/11 Crandall Aff. at Ex. 1 (Docket No. 39, Att. 1). The contemporaneous "Absolute Claims Assignment" (presumably the "replacement assignment" referenced above) mirrored the Resolution's direction by "absolutely assign[ing] to Daniel W. Crandall . . . any and all claims, including demands, and causes of action of any kind whatsoever which the undersigned has or may have . . . against Hartford Casualty Insurance Company and Hartford Steam Boiler Inspection & Insurance Company . . . ." *See id.* at Ex. 2.

Notwithstanding Defendants' argument that CatRisk's most recent (re)assignment of claims to Plaintiff lacked corporate formalities and took place after Defendants' Motion for Summary Judgment on the issue (*see* Defs.' Reply in Supp. of Mot. for Summ. J., p. 2, n.1 (Docket No. 47)), the Court cannot conclude as a matter of law that CatRisk has not assigned its claims to Plaintiff. To be sure, the record reflects the possibility of either (1) a proper, original assignment of claims from CatRisk to Plaintiff, or (2) a subsequent (re)assignment of claims from CatRisk to Plaintiff. Construing the facts supporting these possibilities in Plaintiff's favor, the Court cannot find here that either no assignment between CatRisk and Plaintiff ever existed or, similarly, no such assignment currently exists. At the very least, questions of fact exist to warrant the denial of Defendants' Motion for Summary Judgment on this discrete issue.[2]

---

[2] Defendants alternately argue that Defendant Hartford Casualty first needed to consent in writing before CatRisk could assign its claims to Plaintiff, pointing to the following Policy language: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured." *See* Defs.' Mem. in Supp.

**MEMORANDUM DECISION AND ORDER - 6**

2.      <u>Plaintiff's Representation of CatRisk *Pro Se*</u>

"Although an individual may proceed *pro se* in federal court, '[a] corporation may appear in federal court only through licensed counsel.'" *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 5 (Docket No. 36, Att.) (citing *U.S. v. High Country Broad. Co.*, 3 F.3d 1244 (9th Cir. 1993)). Assuming the assignment's validity (*see supra* at pp. 5-7), Defendants claim that CatRisk's assignment of claims to Plaintiff circumvents the rule requiring corporate representation. *See id.* at pp. 5-9 ("In order to avoid the well-established rule prohibiting *pro se* entity representation, Mr. Crandall 'assigned' CatRisk's claims to himself. . . . . Mr. Crandall's purported assignment was for the sole purpose of circumventing the rule against *pro se* corporate representation in federal court and accordingly, this Court should dismiss the Complaint.").

While originally taking issue with Defendants' characterization of the motivation behind CatRisk's assignment of claims, Plaintiff has since retained the services of Andrew T. Schoppe,

---

of Mot. for Summ. J., p. 4 (Docket No. 36, Att. 1). The Court is persuaded by Plaintiff's retort, and concludes that such language does not apply to post-loss assignments. *See* Pl.'s Opp. to Defs.' Mot. for Summ. J., pp. 2-3 (Docket No. 46, Att. 1); *see also* 17 Williston on Contracts § 49:126 (4th ed.) ("As a general principle, a clause restricting assignment does not in any way limit the policyholder's power to make an assignment of the rights under the policy – consisting of the right to receive the proceeds of the policy – after a loss has occurred. The reasoning here is that once a loss occurs, an assignment of the policyholder's rights regarding that loss in no way materially increases the risk to the insurer. After a loss occurs, the indemnity policy is no longer an executory contract of insurance. It is now a vested claim against the insurer and can be freely assigned or sold like any other chose in action or piece of property."). Moreover, if Defendants' argument against post-loss assignments of claims is accepted, the Court questions when an insurer would *ever* consent to such an assignment, rendering such contractual language illusory or, at a minimum, ambiguous. To the extent the Policy is ambiguous in this respect, it is construed against Defendants. *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 115 P.3d 751, 754 (Idaho 2005) ("If the Court finds any ambiguities in the insurance policy, they must be construed against the insurer.") (citing *Foremost Ins. Co. v. Putzier*, 627 P.2d 317, 321 (Idaho 1981) (". . . insurance policies are to be construed most liberally in favor of recovery, with all ambiguities being resolved in favor of the insured.")).

**MEMORANDUM DECISION AND ORDER - 7**

an attorney licensed to practice law in the State of Idaho. *See* 4/4/11 Not. of Appearance

(Docket No. 48). Therefore, to the extent Plaintiff was procedurally prohibited from pursuing

CatRisk's assigned claims himself, he is now represented by legal counsel. As a result,

Defendants' argument no longer applies, warranting the denial of Defendants' Motion for

Summary Judgment on this discrete issue.[3]

## C.     CatRisk's Claims and Plaintiff's Alleged Damages

"When an insured assign[s] rights to recover under an insurance policy, the assignee is in

the same position as the insured and takes only those rights and remedies the insured had."

*Hartman v. United Heritage Pop. And Ca. Co.*, 108 P.3d 340, 345 (Idaho 2005) (citing *J.R.*

*Simplot Co. v. W. Heritage Ins. Co.*, 977 P.2d 196 (Idaho 1999)). In other words, here, Plaintiff

stands in CatRisk's shoes – that is, Plaintiff cannot acquire by assignment anything to which the

insured, CatRisk, has no rights. With this principle in mind, Defendants argue that Plaintiff is

attempting to assert claims for damages CatRisk did not hold, namely: (1) Plaintiff's claim for

negligent infliction of emotional distress, (2) Plaintiff's "lost compensation damages," and (3)

Plaintiff's loss on investment in CatRisk. *See* Defs.' Mem. in Supp. of Mot. for Summ. J., pp. 9-

13 (Docket No. 36, Att. 1).

### 1.     Plaintiff's Claim for Negligent Infliction of Emotional Distress

Defendants contend that Plaintiff's negligent infliction of emotional distress claim must

fail because CatRisk, as a business entity, is incapable of maintaining such a claim. *See id.* at p.

---

[3] During oral argument, Defendants' counsel conceded that this portion of their Motion for Summary Judgment no longer applied, in light of Mr. Schoppe's involvement in Plaintiff's claims.

**MEMORANDUM DECISION AND ORDER - 8**

10 ("CatRisk is not a natural person subject to 'emotional distress'; there is no 'emotional injury' of CatRisk, nor any 'physical manifestation' of such injury.").

It is true that, practically speaking, CatRisk (the inanimate object that it is) cannot exhibit "some physical manifestation of . . . emotional injury" as is required to support a negligent infliction of emotional distress claim in Idaho. *See Johnson v. McPhee*, 210 P.3d 563, 574 (Idaho Ct. App. 2009) (describing elements of negligent infliction of emotional distress claim as category of negligence, requiring elements of negligence claim "[i]n addition to . . . some physical manifestation of the plaintiff's emotional injury.") (citing *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank*, 804 P.2d 900, 906 (Idaho 1991)).

Still, Plaintiff appears to be arguing that, independent of CatRisk's claims, he himself is an "insured" under the Policy, capable of bringing a negligent infliction of emotional distress claim on his own behalf. *See* Pl.'s Opp. to Defs.' Mot. for Summ. J., pp. 4-5 (Docket No. 46, Att. 1) (quoting following Policy language: ". . . . Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers."). Except, Plaintiff's Complaint states in no uncertain terms that this action is premised upon CatRisk's claims – not Plaintiff's. Plaintiff unequivocally recognizes as much when he states on more than one occasion that he is "bring[ing] this action as the legal assignee *of claims for CatRisk[ ]*." *See* Pl.'s Compl., pp. 1 & 5 (Docket No. 1) (emphasis added).

Considering the Complaint as written, and therefore understanding that Plaintiff's negligent infliction of emotional distress claim is, ultimately, CatRisk's claim, such a cause of

action cannot be sustained here.[4]  Defendants' Motion for Summary Judgment is granted in this limited respect.

2.    Plaintiff's Alleged "Lost Compensation" Damages

On or around September 30, 2010, Plaintiff's expert, Thomas J. South, submitted a report detailing "an economic analysis of the damages resulting from the equipment breakdown accident on May 21, 2009, with the subsequent denial of insurance by the Defendants."  *See* 9/30/10 Rpt. at p. 1, attached as Ex. C to 2/25/11 McGee Aff. at ¶ 4 (Docket No. 36, Att. 2).  Mr. South includes Plaintiff's "lost compensation" among these damages, stating:

> Lost Compensation: At the beginning of 2008, Mr. Crandall stopped working at his previous employment and put all his efforts into building CatRisk.  He intended for the medical bill and accounting services segment of CatRisk to grow and sustain the company.  With the equipment breakdown accident of May 21, 2009, and the subsequent denial of insurance on that breakdown, it was clear that the work he had done in the previous 17 months was wasted.  He then attempted to find a qualified and affordable attorney to litigate the case who had an understanding of the technology component of this case, but was unable to find such a person.  Due to these reasons, Mr. Crandall has not been able to return to his prior level of compensation.  It is anticipated that the litigation for this case will continue through May of 2011.  For purposes of this report, I used the date of May 21, 2011, which will be two full years from the date of the equipment breakdown accident, and three years and almost five months from beginning the work of developing the CatRisk business.  All of that time has been and will be without receiving any compensation.  His weighted average of wages from 2003 through 2007 was $351,455.  A Cost-of-Living Adjustment (COLA) of 2.78% was applied to the future wages based on the weighted average of COLA's for 10 years provided by the Social Security Administration.  Also, the future earnings have been converted to present value utilizing a discount rate of 2.74%.  This rate is the 10 year U.S. Treasury Note Rate as of September 24, 2010, and is

---

[4]  In making this ruling, the Court is not determining the legal effect, if any, of the Policy's language (*see supra* at p. 9) concerning the scope of insurance coverage on Plaintiff's individual status as a separate "insured."  Instead, it finds only that CatRisk (through Plaintiff) is making a claim for negligent infliction of emotional distress and that business entities cannot assert such claims.  Plaintiff's counsel admitted as much during oral argument.

> considered a risk-free rate of investment.  Total damage for lost compensation for
> the period covering January 1, 2008, to May 21, 2011, is $1,190,416.

*See id*. at p. 2.  Pointing again to the fact that Plaintiff is pursuing only *CatRisk's* assigned

claims, Defendants argue that Mr. South's above-referenced "lost compensation" damages are

not recoverable in this action because "[n]either [Plaintiff's] prior wages, nor the wages

[Plaintiff] might expect to receive in the current job market, have any relationship to the claims

of CatRisk."  *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 11 (Docket No. 36, Att. 1).

　　Plaintiff does not substantively respond to Defendants' arguments but, instead, points out

only that Defendants have not disclosed a damages expert of their own.  Therefore, according to

Plaintiff,  Mr. South's calculations should be accepted as appropriately-claimed damages.  *See*

Pl.'s Opp. to Defs.' Mot. for Summ. J., pp. 3-4 ("Without its own damages expert to help it

navigate among forensic accounting principles, and testify as to the presumptions forming the

basis of Defendants' arguments set forth in the summary judgment, the Court must presume that

Plaintiff's report and the methodologies used in arriving at the categories and amounts of

damages were done in a proper manner under the summary judgment standard (wherein all

inferences are to be made in the non-moving party's favor.").  Apparently, Plaintiff misperceives

that the act of not naming an expert on a particular issue constitutes some sort of summary

judgment concession upon the issue addressed by the opposing party's expert. The Court does

not agree.

　　For the purposes of Defendants' Motion for Summary Judgment, it is immaterial whether

Defendants have their own damages expert.  Likewise, Mr. South's credentials are immaterial, as

is the mathematical legitimacy of his computations.  Simply put, Plaintiff's ability to recover

**MEMORANDUM DECISION AND ORDER - 11**

damages represented by his own "lost compensation" necessarily turns on CatRisk's ability to claim those same category of damages by way of a coverage dispute against its insurer. Based upon the record, argument presented thus far, and case law cited (or not cited, as the case may be), CatRisk's damages cannot be measured using estimates of Mr. Crandall's opportunity costs and/or lost compensation. Defendants' Motion for Summary Judgment is granted in this limited respect.

   3.   Plaintiffs' Alleged Damages for "Loss on Investment in CatRisk"

   Mr. South also identifies "loss on investment in CatRisk" as a type of damage that Plaintiff sustained as a consequence of the May 21, 2009 incident and subsequent events." *See* 9/30/10 Rpt. at p. 2, attached as Ex. C to 2/25/11 McGee Aff. at ¶ 4 (Docket No. 36, Att. 2). Specifically, Mr. South states:

> Loss on Investment in CatRisk: Significant expenses were incurred in the start-up years of CatRisk. There is an expectation that any new company will incur start-up expenses. However, in the case of CatRisk, there will never be a chance to re-coup those expenses and become profitable because of the equipment breakdown accident. Although there was some income, the overall net loss for 2008 and 2009 was $279,046. This loss can be attributed to the following: (1) typical start-up expenses; (2) research and development for the specialized services that CatRisk would be offering; and (3) disaster expenses associated with the May 21, 2009, equipment breakdown accident of $43,917.

*See id.* Defendants again challenge Plaintiff's ability to recover this type of damage, arguing that it is not a recoverable amount under the Policy. *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 12 (Docket No. 36, Att. 1) ("For the same reasons Mr. Crandall cannot recover 'lost compensation' – his status as a purported assignee of CatRisk – he cannot recover his individual loss on investment in CatRisk."); *see also* Defs.' Reply in Supp. of Mot. for Summ. J., p. 5 (Docket No. 47) ("Finally, all of the alleged damage calculations arise out of contractual

**MEMORANDUM DECISION AND ORDER - 12**

liabilities and obligations of CatRisk or Mr. Crandall separate and apart from the property

damage Mr. Crandall alleges was covered by CatRisk's contract for insurance with Hartford. In

other words, even if the equipment breakdown was a covered event – which it was not – Mr.

Crandall could not claim the losses he is claiming.").

As with Plaintiff's alleged "lost compensation" damages, the Court disregards any

argument suggesting that the lack of any expert testimony from Defendants automatically

buttresses Plaintiff's ability to recover Plaintiff's alleged losses here – it does not. *See supra* at

pp. 11-12. Rather, the Court agrees with Defendants that the type of recovery sought through

this class of damages is not an accurate assessment of *CatRisk's* actual damages (as opposed to

Plaintiff's individualized damages) resulting from the Defendants' denial of coverage. If,

indeed, these damages are a function of the May 21, 2009 incident alone, Defendants' conduct –

liability notwithstanding – is of little importance because it could not have caused the damages

Plaintiff now claims vis à vis his investment losses. These damages are too attenuated and not

particular to CatRisk itself; hence, Defendants' Motion for Summary Judgment is granted in this

limited respect.

4.     <u>CatRisk's Remaining Damages Claim</u>

Mr. South goes on to identify three additional sets of damages that Defendants also lodge

objections against, including: (1) "Loss on Investment in Physicians Billing and Support

Services, Inc." ("PSSI"); (2) "Loss on Investment in Moore Support Services, Inc." ("MSSI");

and (3) "Loss on Accounting Services." *See* 9/30/10 Rpt. at pp. 2-3, attached as Ex. C to 2/25/11

McGee Aff. at ¶ 4 (Docket No. 36, Att. 2); *see also* Defs.' Mem. in Supp. of Mot. for Summ. J.,

pp. 13-17 (Docket No. 36, Att. 1).

**MEMORANDUM DECISION AND ORDER - 13**

a.      *Plaintiff's Alleged Loss on Investment in PSSI*

According to Mr. South, CatRisk paid $127,750 to purchase PSSI on November 1, 2008. *See* 9/30/10 Rpt. at p. 2, attached as Ex. C to 2/25/11 McGee Aff. at ¶ 4 (Docket No. 36, Att. 2). Plaintiff was in the process of developing PSSI but, after the May 21, 2009 incident, "was unable to devote any additional time to the success of this company." *See id.* Plaintiff therefore seeks to recover this investment amount (less $29,000 and corresponding interest)[5] arising from Defendants' denial of coverage. *See id.*

As presented, these alleged losses are problematic for at least two reasons. First, based upon the record before the Court, Plaintiff's inability to further develop PSSI appears to be a function of the May 21, 2009 incident itself, not Defendants' subsequent coverage decision. Other than pointing to an absence of expert testimony from Defendants (*see supra* at pp. 11-12), Plaintiff does not dispute this point.[6] Second, even when assuming a causal relationship between the losses sought and Defendants' conduct, Plaintiff fails to actually *value* PSSI at the time of PSSI's transfer to IFRS 4 Consulting, LLC. This is significant because if, at the time of transfer, PSSI's value was less than the original $127,750 purchase price, there would be no basis to claim that full investment amount as damages. Yet, neither Plaintiff nor Mr. South attempts to provide any figures substantiating these claimed damages, other than to assume that PSSI's initial purchase price on November 1, 2008, without more, represents PSSI's value nearly seven

---

[5] In forgiveness of a $29,000 debt to Mike Smith, CatRisk transferred ownership of PSSI to Mike Smith's wholly owned company, IFRS 4 Consulting, LLC, effective January 1, 2010. *See* 9/30/10 Rpt. at p. 2, attached as Ex. C to 2/25/11 McGee Aff. at ¶ 4 (Docket No. 36, Att. 2).

[6] During oral argument, Plaintiff's counsel stated that he had "no counterargument" to Defendants' critique of Plaintiff's alleged loss on investment in PSSI.

**MEMORANDUM DECISION AND ORDER - 14**

months later.  These shortcomings compromise Plaintiff's attempt to recover alleged investment losses in PSSI; Defendants' Motion for Summary Judgment is granted in this limited respect.

> ### b. *Plaintiff's Alleged Loss on Investment in MSSI*

Mr. South states that CatRisk purchased MSSI from Lynne Moore for $155,850 and provided a $31,053 loan to MSSI. *See* 9/30/10 Rpt. at pp. 2-3 & Appx. E, attached as Ex. C to 2/25/11 McGee Aff. at ¶ 4 (Docket No. 36, Att. 2).  "Due to the inability to service the clients of MSSI, [Ms.] Moore took [MSSI] back from CatRisk on November 1, 2009, through an installment contract," consisting of three separate notes receivable from Ms. Moore totaling $185,903 (the amount CatRisk previously put into MSSI, less one loan payment of $1,000).  *See id.* at p. 3 & Appx. E.  According to Mr. South, the current amount owing to CatRisk is $171,859 (the installment sale amount, less $14,044 in payments); in turn, Plaintiff seeks $171,859 in damages as CatRisk's alleged loss on investment in MSSI.  *See id.* at p. 3 & Appx. E ("As CatRisk is in need of immediate cash, it will need to sell those notes receivable at a discount. However, due to lack of collateral, no down payment, too long of a term, and too much risk of default, a company in the business of purchasing notes stated that it had no value.").

The Court again, on this record, questions Plaintiff's ability to recover CatRisk's alleged investment losses in MSSI.  First, as with Plaintiff's alleged investment losses in PSSI, it is not clear whether this "damage" is the result of Defendants' conduct or, rather, the May 21, 2009 incident.  Other than a repeated reference to an absence of expert testimony from Defendants (*see supra* at pp. 11-12), Plaintiff's briefing does not take issue with this point.[7]  Second, the Court understands that CatRisk holds the notes to the claimed $171,859 such that, assuming Ms.

---

[7]  During oral argument, Plaintiff's counsel stated that he had "no counterargument" to Defendants' critique of Plaintiff's alleged loss on investment in MSSI.

**MEMORANDUM DECISION AND ORDER - 15**

Moore continues with her payments to Plaintiff/CatRisk, there is no injury in need of reimbursement. Finally, without a valuation analysis of MSSI, the Court cannot accept Plaintiff's unilateral perspective that the at-issue notes receivable have no value. These shortcomings compromise Plaintiff's attempt to recover alleged investment losses in MSSI; Defendants' Motion for Summary Judgment is granted in this limited respect.

c.      *Plaintiff's Alleged Loss on Accounting Services*

Following the May 21, 2009 incident, Mike Smith "was forced to leave CatRisk due to loss of business and a lack of funds to pay him." *See* 9/30/10 Rpt. at p. 3, attached as Ex. C to 2/25/11 McGee Aff. at ¶ 4 (Docket No. 36, Att. 2). According to Mr. South, "[s]ince that time, [Mr. Smith] has secured two contracts for accounting work worth $177,500 which would have been clients of CatRisk if he were still an employee." *See id.* Plaintiff seeks to recover 85% of these contracts' worth ($150,875), recognizing that "[a]ccounting firms generally sell on the open market at anywhere from 85-125% of one year's gross fees." *See id.* ("If CatRisk were to purchase similar clients, it would cost $150,875 using a purchase price of 85% of one year's gross fees.").

Defendants argue that Plaintiff's alleged loss on accounting services constitutes losses of prospective economic advantage, unrecoverable as a matter of Idaho law. *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 15 (Docket No. 36, Att. 1). Defendants correctly point out that such damages may not be recoverable under negligence theories. *See id.* (citing *Just's, Inc. v. Arrington Const. Co.*, 583 P.2d 997, 1004 (Idaho 1978) ("As a general rule, no cause of action lies against a defendant whose negligence prevents the plaintiff from obtaining prospective economic advantage.")). But Plaintiff brings both tort *and* contract claims against Defendants.

**MEMORANDUM DECISION AND ORDER - 16**

Regardless, Defendants contend that the Policy – even when assuming coverage – does not recognize Plaintiff's claimed loss on accounting services as covered "actual loss of business income." *See id*. at p. 16. The Policy pays for the actual loss of business income incurred during the period that:

> (1) Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and
>
> (2) Ends on the earlier of:
>
>> (a) The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or physical damage occurred; or
>>
>> (b) 30 consecutive days after the date determined in (a) above.

*See* Actual Loss Sustained Business Income & Extra Expense - Specified Limit Coverage, attached as Ex. H to 2/25/11 McGee Aff. at ¶ 9 (Docket No. 36, Att. 2). With this Policy language in mind, Defendants claim that "[t]he accounts allegedly lost by CatRisk because it could not pay Mr. Smith a salary did not even exist during the covered period." *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 16 (Docket No. 36, Att. 1). Other than pointing to an absence of expert testimony from Defendants (*see supra* at pp. 11-12), Plaintiff's briefing does not take issue with this point.[8]

Because Plaintiff's alleged loss on accounting services are not covered by the Policy, there is no foundation to permit the recovery that Plaintiff now seeks through potential lost revenue and/or clients. Therefore, Defendants' Motion for Summary Judgment is granted in this limited respect.

---

[8] During oral argument, Plaintiff's counsel stated that he had "no counterargument" to Defendants' challenge to Plaintiff's alleged loss on accounting services.

**MEMORANDUM DECISION AND ORDER - 17**

**D.     CatRisk's Punitive Damages Claim**

"A claim for punitive damages cannot be asserted in the claimant's pleading without the approval of the trial court." *See Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 224 P.3d 1068, 1088 (Idaho 2009). "The claimant must make a pretrial motion and, after a hearing, the trial court must conclude that the claimant has established a reasonable likelihood of proving facts sufficient to support an award of punitive damages." *See id.* (citing I.C. § 6-1604(2)). Plaintiff's Complaint contains a claim for punitive damages. *See* Pl.'s Compl., p. 14 (Docket No. 1). Defendants seek to dismiss Plaintiff's punitive damages claim "[b]ecause [Plaintiff] failed to abide by Idaho's pleading standards." *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 17 (Docket No. 36, Att. 1).

On March 16, 2011, Plaintiff moved to amend his Complaint to add a claim for punitive damages. *See* § 6-1604 Mot. for Hearing on Punitive Damages (Docket No. 44). As a consequence, at oral argument, Defendants withdrew its challenge to Plaintiff's punitive damages claim. Therefore, Defendants' Motion for Summary Judgment is denied as moot in this limited respect.

**E.     Plaintiff's Claim for Negligent Misrepresentation**

While recognizing the viability of a negligent misrepresentation claim generally, the Idaho Supreme Court has limited its ambit to professional relationships involving an accountant. *See Duffin v. Idaho Crop Improvement Ass'n*, 895 P.2d 1195, 1203 (Idaho 1995) ("To further clarify the matter, we expressly hold that, except in the narrow confines of a professional relationship involving an accountant, the tort of negligent misrepresentation is not recognized in Idaho."); *see also Mannos v. Moss*, 155 P.3d 1166, 1174 (Idaho 2007) (rejecting plaintiff

appellant's contention that tort of negligent misrepresentation should be extended to include "misrepresentations made by business persons in basic accounting documents, such as financial statements," holding: "In *Duffin* . . ., this Court strictly and narrowly confined the tort of negligent misrepresentation to professional relationships involving an accountant. This case does not involve a professional accounting relationship; rather, it involves a business relationship between a purchaser and a seller. The district court did not err in granting summary judgment on this claim."); *In re Walter B. Scott & Sons, Inc.*, 436 B.R. 582, 594 (Bkrtcy. D. Idaho 2010) ("Under Idaho law, the tort of negligent misrepresentation is strictly and narrowly confined to professional relationships involving an accountant.").

Defendants argue that, "[b]ecause Plaintiff failed to plead a professional relationship involving an accountant, and can demonstrate no such relationship, the court should dismiss Plaintiff's claim for negligent misrepresentation." *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 18 (Docket No. 36, Att. 1). The Court agrees. Under Idaho law, an insured's relationship with its insurer does not amount to the sort of relationship necessary to support a negligent misrepresentation claim – more is needed; namely, an accountant/client relationship. Defendants' Motion for Summary Judgment is therefore granted in this limited respect.

## F.  Defendant Hartford Steam Boiler

Defendants argue that Defendant Hartford Steam Boiler was not in a contractual relationship with, or in privity with, either Plaintiff or CatRisk and, therefore, cannot be sued on contract-based claims. *See id.* ("Because [Hartford Steam Boiler] and CatRisk have no direct contractual relationship, [Plaintiff] cannot seek damages from [Hartford Steam Boiler] as the assignee of CatRisk based upon the contract for insurance at issue in this case.").

**MEMORANDUM DECISION AND ORDER - 19**

"It is axiomatic in the law of contract that a person not in privity cannot sue on a contract"; "'[p]rivity' refers to 'those who exchange the [contractual] promissory words or those to whom the promissory words are directed." *See Wing v. Martin*, 688 P.2d 1172, 1177 (Idaho 1984) (citations omitted). At oral argument, Plaintiff's counsel conceded the absence of privity, but argued that Defendant Hartford Steam Boiler intentionally interfered with Catrisk's contractual relationship (the Policy) with Defendant Hartford Casualty by virtue of Defendant Hartford Casualty's contract for reinsurance with Defendant Hartford Steam Boiler and, later Defendant Hartford Steam Boiler's investigation of Plaintiff's/CatRisk's claim. *See supra* at p. 2, n.1. The Court disagrees. Plaintiff's Complaint makes no reference to a claim for intentional interference with contract. Moreover, Defendants' counsel admits that Defendant Hartford Steam Boiler was acting as Defendant Hartford Casualty's agent during all times relevant to this action.

Therefore, Defendant Hartford Steam Boiler should be dismissed; Defendants' Motion for Summary Judgment is granted in this limited respect.

### III. <u>ORDER</u>

Consistent with the foregoing, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 36) is GRANTED in part and DENIED in part as follows:

1.      On the issue of the assignment of CatRisk's claims to Plaintiff, Defendants' Motion for Summary Judgment is DENIED;

2.      On the issue of Plaintiff's claims for negligent infliction of emotional distress, Defendants' Motion for Summary Judgment is GRANTED;

3.      On the issue of Plaintiff's alleged "lost compensation" damages, Defendants'

**MEMORANDUM DECISION AND ORDER - 20**

Motion for Summary Judgment is GRANTED;

4.      On the issue of Plaintiff's alleged damages for "loss on investment in CatRisk," Defendants' Motion for Summary Judgment is GRANTED;

5.      On the issue of Plaintiff's alleged damages for "loss on investment in Physicians Billing and Support Services, Inc.," Defendants' Motion for Summary Judgment is GRANTED;

6.      On the issue of Plaintiff's alleged damages for "loss on investment in Moore Support Services, Inc.," Defendants' Motion for Summary Judgment is GRANTED;

7.      On the issue of Plaintiff's alleged damages for "loss on accounting services," Defendants' Motion for Summary Judgment is GRANTED;

8.      On the issue of Plaintiff's claim for punitive damages, Defendants' Motion for Summary Judgment is DENIED as moot;

9.      On the issue of Plaintiff's claim for negligent misrepresentation, Defendants' Motion for Summary Judgment is GRANTED; and

10.     On the issue of Plaintiff's contract claims against Defendant Hartford Steam Boiler, Defendants' Motion for Summary Judgment is GRANTED.

In light of this Memorandum Decision and Order, on or before August 30, 2011, the parties are to notify the Court concerning the status of the action – specifically, whether Defendants' Motion for Summary Judgment resolves the claims raised in the underlying

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 21**

Complaint. Unless otherwise notified, the Court will vacate any pending deadlines and enter a corresponding judgment, consistent with this Memorandum Decision and Order.



DATED: **August 22, 2011**

Honorable Ronald E. Bush
U. S. Magistrate Judge