UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL W. CRANDALL,<br><br>    Plaintiff,<br><br>vs.<br><br>HARTFORD CASUALTY INSURANCE COMPANY, and HARTFORD STEAM BOILER INSPECTION & INSURANCE COMPANY,<br><br>    Defendants. | Case No.: CV 10-00127-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF'S § 6-1604 MOTION FOR HEARING ON PUNITIVE DAMAGES**<br><br>**(Docket No. 44)** |

Currently pending before the Court is Plaintiff's § 6-1604 Motion for Hearing on Punitive Damages (Docket No. 44). Having carefully reviewed the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## BACKGROUND

Plaintiff brings this lawsuit as the "legal assignee of claims" for CatRisk.us, LLC ("CatRisk"), an Idaho limited liability company providing electronic medical billing services to small physician practices in several states. CatRisk performed these services entirely over the internet, using computer network technologies to communicate with its medical, insurance, and governmental clients/subscribers. To insure the risk of a computer system failure, CatRisk purchased a "Special Multi-Flex Spectrum Policy" (the "Policy") from Defendant Hartford Casualty Insurance Company ("Hartford Casualty"), effective on May 1, 2008.

**MEMORANDUM DECISION AND ORDER - 1**

Plaintiff alleges that, on May 21, 2009, CatRisk suffered a sudden and catastrophic mechanical breakdown, resulting in the total loss of computer functions. Functionality was restored eight days later and CatRisk was able to resume business operations. Plaintiff reported the incident to CatRisk's insurer, Hartford Casualty, and, on June 3, 2009, Hartford Casualty denied Plaintiff's claim.

Arguing now that Hartford Casualty investigation into the May 21, 2009 incident was both delayed and incomplete, Plaintiff seeks to amend his complaint to assert a claim for punitive damages against Hartford Casualty.[1]

## DISCUSSION

### A. Amending a Complaint to Add a Claim for Punitive Damages

"A prayer for punitive damages is not a stand-alone cause of action, but flows from an underlying cause of action, such as a breach of contract or a tort, when the conduct of a party meets the threshold level of being oppressive and outrageous." *See Boise Tower Associates LLC v. Washington Capital Joint Master Trust*, 2006 WL 1749656 at *12 (D. Idaho 2006). Conduct justifying punitive damages requires "an intersection of two factors: a bad act and a bad state of mind." *See Linscott v. Rainier Nat. Life Ins. Co.*, 606 P.2d 958, 962 (Idaho 1980). The defendant must (1) act in a manner that was an extreme deviation from reasonable standards of conduct with an understanding of – or disregard for – its likely consequences, and must (2) act with an extremely harmful state of mind, described variously as with malice, oppression, fraud, gross negligence, wantonness, deliberately, or willfully. *See Myers v. Workmen's Auto Ins. Co.*,

---

[1] Defendant Hartford Steam Boiler Inspection & Insurance Company has already been dismissed from this action; therefore, Plaintiff's request to add a claim for punitive damages applies to Hartford Casualty only.

**MEMORANDUM DECISION AND ORDER - 2**

95 P.3d 977, 983 (Idaho 2004). For plaintiffs to be entitled to amend their complaint to add a claim for punitive damages, they need to show "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *See* I.C. § 6-1604(2).

**B.     Analysis**

Plaintiff's argument in favor of adding a claim for punitive damages against Hartford Casualty relates, generally, to the manner in which Hartford Casualty responded to Plaintiff's loss claim. Specifically, Plaintiff argues that Hartford Casualty (1) did not investigate Plaintiff's claim with reasonable diligence, and (2) did not conduct a thorough, impartial investigation into the May 21, 2009 incident before denying Plaintiff's claim. These arguments, while persuasive to an extent, do not rise to the level needed in order to add a claim for punitive damages under Idaho law.

     1.     <u>No Reasonable Likelihood of Showing of Hartford Casualty's "Extremely Harmful State of Mind"</u>

Plaintiff has not demonstrated a reasonable likelihood that he could make a showing at trial – through clear and convincing evidence – that Hartford Casualty engaged in the requisite bad act, indicative of an extremely harmful state of mind (beyond, allegedly, denying Plaintiff's claim in bad faith), needed to sustain a claim for punitive damages.

The record demonstrates amply that Plaintiff is beyond frustrated, believing that his claim was handled poorly from the outset and that its ultimate denial was manifestly improper. However, this alone cannot justify a claim for punitive damages; otherwise, punitive damages claims would "piggy-back" without more upon each and every bad faith claim. However, more is needed. To that end, Plaintiff, through his expert William A. Walker, contends that a punitive damages claim is warranted here given Hartford Casualty's delinquent and incomplete

**MEMORANDUM DECISION AND ORDER - 3**

investigation. The Court has scrutinized and considered Mr. Walker's opinion and the related argument of Plaintiff, but ultimately is not persuaded.

First, while it is true that some level of familiarity in computer equipment breakdown should be expected to exist by way of claim investigations into such matters, the undersigned cannot agree with Plaintiff to the extent he argues that the absence of a computer forensics expert, available on a moment's notice on the front end of any investigation, constitutes a bad act for the purposes of a punitive damages analysis. Simply put, there is no evidence in the record supporting such a conclusion. While Plaintiff may argue that this reality constitutes a breach of an understood duty owed to him by virtue of his insurance policy, the record does not support it rising to the level of an extreme deviation from reasonable standards of conduct, combined with an extremely harmful state of mind.

Second, given the nature of the alleged mechanical breakdown, it is sensible that technical support from third-parties might be necessary when investigating the claim. Assistance in these areas logically expands the time-line for any claim investigation and, correspondingly, for addressing and fixing the underlying problem. Here, notwithstanding Plaintiff's generalized claims to the contrary, his own expert, Mr. Walker, testified that Hartford Casualty could not have done anything different in terms of getting CatRisk's medical billing services up and running more quickly:

> Q: Are you aware of anything that Hartford could have done that would have allowed that system to be returned to full functionality any sooner than that 7 or 8 days?
>
> A: What they could have done is gone out and studied the problem and advised the insured at the time whether there was coverage, or in this case, there wasn't coverage.

**MEMORANDUM DECISION AND ORDER - 4**

> Q: I'm not talking about coverage right now. I'm talking about getting the thing back running. Is there anything you're aware of, that Hartford could have done, that would have gotten that system functional within a shorter period of time than the 7 or 8 days it took?
>
> A: I'm not aware of anything.

*See* Walker Depo. at 39:24-40:12, attached as Ex. B to McGee Aff. (Docket No. 49, Att. 1).

Again, while Plaintiff can argue that certain delays existed with respect to the way Hartford Casualty investigated the at-issue incident and resolved the coverage dispute, those arguments go to the substance of Plaintiff's bad faith claim, particularly when understanding that any alleged delays did not prevent CatRisk from resuming business.[2] Therefore, based upon the existing record, Hartford Casualty's alleged delays in this respect does not constitute an extreme deviation from reasonable standards of conduct.

Third, although it is possible to argue that a more technical investigation into the cause and nature of the loss should/could have been undertaken, there is no evidence suggesting that Hartford Casualty's alleged failure to exclude all possible causes of the breakdown warrants a claim for punitive damages. Indeed, regardless of whether LWG Consulting's opinions were well-founded or not from a forensic engineering viewpoint, the record reflects that LWG Consulting concluded in no uncertain terms that "[t]he cause of the bad sectors is related to normal wear and tear" – a cause Hartford Casualty determined to be outside the policy coverage. *See* 7/7/09 Rpt., attached as Ex. D to McGee Aff. (Docket No. 49, Att. 1). Even if such

---

[2] Moreover, it appears as though at least *some* delay into the investigation of the cause of the breakdown (and, therefore, coverage determination) is attributable to CatRisk and or its agents/representatives when understanding that the wrong hard drive components were initially sent to LWG Consulting for analysis. *See* Crandall Depo. at 112:17-113:1, attached as Ex. A to McGee Aff. (Docket No. 49, Att. 1).

**MEMORANDUM DECISION AND ORDER - 5**

decisions are debatable, as Plaintiff contends, there is nothing obvious nor inescapably compelling in what Plaintiff has submitted for the Court to conclude that he is reasonably likely to prove that Hartford Casualty had no justification to rely upon LWG Consulting's findings when rendering its coverage opinion.  More particularly in regard to certain of Plaintiff's argument, he points to no authority obligating Hartford Casualty to pursue additional testing – in this case, destructive testing using an atomic microscope – to confirm or disprove LWG Consulting's report.

      Plaintiff's argument is further weakened by full details of his most heavily-emphasized argument – that Hartford Casualty did not do enough to pinpoint the reason for the computer failure, and that micron level microscopic testing should have been performed.  However, not only does an issue exist as to whether Plaintiff even authorized LWG Consulting to perform destructive testing, at Plaintiff's direction, a different laboratory (Kroll Ontrack) did perform subsequent destructive testing – albeit, using an electron microscope – and that such testing showed no particle evidence indicating a head crash.  *See* 11/05/09 Rpt., attached as Ex. D to McGee Aff. (Docket No. 49, Att. 1).  Thus, even though Hartford Casualty theoretically could have done  more investigation, its alleged failure to do so goes to Plaintiff's bad faith claim, and is not a proper basis to add a claim for punitive damages.

      2.    <u>Insufficient Showing of Hartford Casualty's "Bad Motive"</u>

      Aside from arguing generally that Hartford Casualty is motivated to save money by not paying out legitimate claims, Plaintiff offers no evidence of Hartford Casualty's specific ill intent in handling Plaintiff's claim.  The Court is mindful that (1) some of  Hartford Casualty's conduct in the alacrity, or as Plaintiff would contend the lack thereof, in which it responded to

**MEMORANDUM DECISION AND ORDER - 6**

the initial claim, and (2) some facts suggesting the adjustment of the claim was passed back and forth between Hartford Casualty and its re-insurer, Hartford Steam Boiler Inspection & Insurance Company, could be argued to represent a cavalier approach to the claim on the part of Hartford Casualty. However, on the record and argument put forward by Plaintiff in support of his Motion, those matters do not rise to the level of oppressive or outrageous. Therefore, Plaintiff has not demonstrated a reasonable likelihood of making a showing at trial – through clear and convincing evidence – that Hartford Casualty engaged in the requisite bad motive (beyond, allegedly, denying Plaintiff's claim in bad faith) needed to sustain a claim for punitive damages.

### 3. Beyond Denying Plaintiff's Claim, Hartford Casualty's Conduct Did Not Cause Harm to Plaintiff

"Idaho courts are generally reluctant to allow punitive damages in breach of contract cases, adhering to the principle that such damages 'should be awarded cautiously and within narrow limits.'" *Weekes v. Ohio Nat. Life Assur. Corp.*, 2011 WL 6140967, * 6 (D. Idaho 2011) (quoting *Cuddy Mountain Concrete Inc. v. Citadel Constr. Inc.*, 824 P.2d 151, 159 (Idaho 1992)). "To determine if a contractual breach is compelling enough to allow punitive damages, courts ask if the breaching party acted in bad faith or was oppressive, unreasonable, or irrational." *Id*. (citing *Cuddy Mountain Concrete*, 824 P.2d at 160). The Idaho Supreme Court summarized these general concerns as follows:

> The award of punitive damages in the context of a contractual relationship seems to be based on conduct which is unreasonable and irrational in the business context. The acts show a lack of professional regard for the consequences of the breach of the contractual agreement. If a party breaches its duty to act in good faith, it may be liable for . . . punitive damages.

*Id*. (quoting *Cuddy Mountain Concrete*, 824 P.2d at 160).

**MEMORANDUM DECISION AND ORDER - 7**

In addition to these general concerns, the Idaho Supreme Court in *Cuddy* described particular types of evidence that could justify a claim for punitive damages, has laid out specific factors that play a determinative role in deciding whether there is sufficient evidence to support a punitive damages award: among them, "whether the unreasonable conduct actually caused harm to the plaintiff." *Id*. (citing *Cuddy Mountain Concrete*, 824 P.2d at 160-61). Here, it cannot be said that Hartford Casualty's allegedly unreasonable conduct actually caused harm to Plaintiff, above and beyond the harm imposed by Hartford Casualty's denial of the claim itself. As pointed out earlier, Mr. Walker testified that Hartford Casualty could not have done anything different to get CatRisk's medical billing services up and running more quickly than was done by Plaintiff on his own. *See supra* at p. 4. With this in mind, based upon the existing record, Hartford Casualty's conduct did not cause the sort of harm justifying the additional of a punitive damages claim.

## ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that Plaintiff's request to add a claim for punitive damages, as sought in his Motion for Hearing on Punitive Damages (Docket No. 44), is DENIED.

DATED: **March 12, 2012**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 8**