UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL W. CRANDALL,<br><br>    Plaintiff,<br><br>vs.<br><br>HARTFORD CASUALTY INSURANCE COMPANY, and HARTFORD STEAM BOILER INSPECTION & INSURANCE COMPANY,<br><br>    Defendants. | Case No.: CV 10-00127-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANT'S MOTION TO AMEND SCHEDULING ORDER (Docket No. 95)**<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO DESIGNATE SUBSTITUTE EXPERT WITNESS (Docket No. 99)** |

Currently pending before the Court are (1) Defendant's Motion to Amend Scheduling Order (Docket No. 95), and (2) Plaintiff's Motion for Leave to Designate Substitute Expert Witness (Docket No. 99). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

Relevant to the at-issue motions, on or around August 6, 2012, Plaintiff moved to vacate the August 27, 2012 trial date due to the unexpected death of his insurance claims-handling expert witness, William Walker. *See* Pl.'s Mot. to Vacate and Continue Trial (Docket No. 88). Defendant did not oppose Plaintiff's motion (*see* Def.'s Not. of Joinder (Docket No. 89) and, on August 14, 2012, this Court vacated the August 27, 2012 trial date. *See* 8/14/12 DEO (Docket No. 90). Following an August 20, 2012 status conference (*see* 8/20/12 Minute Entry (Docket No. 93), the Court ordered (1) Plaintiff to identify and disclose his replacement expert opinion

**MEMORANDUM DECISION AND ORDER - 1**

on or before September 24, 2012, (2) Defendant to identify and disclose its responsive expert opinion on or before October 19, 2012, and (3) Plaintiff to identify and disclose his rebuttal expert opinion on or before October 29, 2012.  *See* 8/20/12 Order Re-Setting Trial (Docket No. 92).  Plaintiff thereafter identified and disclosed Kevin K. Dawson as his replacement expert witness for the late Mr. Walker.

On October 29, 2012, Defendant moved to amend the scheduling order to allow it to file another motion for summary judgment.  *See* Def.'s Mot. to Am. Sched. Order (Docket No. 85).  According to Defendant, Mr. Dawson's expert opinion provided a new, previously unavailing, basis for summary judgment.  *See* Mem. in Supp. of Def.'s Mot. to Am. Sched. Order, p. 2 (Docket No. 95, Att. 1) ("Among other opinions, Mr. Dawson stated that the denial under the Equipment Breakdown coverage was proper, and identified only damages under the contract for insurance.  His only issue is with the denial of coverage, not the claim handling.  In light of such changes in the course of the litigation, Defendant . . . requests . . . that the Court grant amendment of the scheduling order to allow argument on a motion for summary judgment.").

On November 5, 2012, Plaintiff indicated that he "ha[d] no objection to the amendment of the Scheduling Order as requested by the Defendant in order to permit coverage issues to be determined on summary judgment prior to trial."  *See* Pl.'s Resp. to Def.'s Mot. to Am. Sched. Order, p. 1 (Docket No. 98).  However, on the same date, Plaintiff also moved for leave to designate a substitute expert witness to take the place of his currently-designated expert witness, Mr. Dawson.  *See* Pl.'s Mot. for Leave to Designate Substitute Expert Witness (Docket No. 99).  According to Plaintiff, "[t]he reason for this request is that Mr. Dawson, who prepared the report which is the focus of the Defendant's proposed Motion for Summary Judgment and who was

**MEMORANDUM DECISION AND ORDER - 2**

retained following the unfortunate death of Mr. Walker, abandoned this case after preparing his initial report on September 24, [2012] and without producing the rebuttal to the Defendant's expert's report which would be essential to the Plaintiff's defense of the proposed [Motion for Summary Judgment]." *See* Mem. in Supp. of Pl.'s Mot. for Leave to Designate Substitute Expert Witness, p. 2 (Docket No. 99, Att. 1).

## II. DISCUSSION

District courts have broad discretion in supervising the pretrial phase of litigation. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). Once a district court has issued its scheduling order, FRCP 16 sets the standard for modifying the schedule. That standard requires "good cause with the judge's consent" to modify a scheduling order. *See* Fed. R. Civ. P. 16(b)(4). FRCP 16(b)'s good cause standard primarily considers the diligence of the party seeking the amendment. *See Johnson*, 975 F.2d at 609 (citing Fed. R. Civ. P. 16 Advisory Committee's Note (1983)). Although the existence of prejudice to the party opposing the modification may supply reasons to deny a motion, "the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id*. Here, both motions seek to amend the Court's Scheduling Order – Defendant seeks to extend the deadline for filing motions for summary judgment due to Mr. Dawson's recent expert opinions; Plaintiff essentially seeks an extension of time to disclose a third expert witness. Defendant has met the good cause standard. Plaintiff has not.

**A.   Defendant's Motion to Amend Scheduling Order (Docket No. 95)**

As a result of the death of Mr. Walker and Plaintiff naming a replacement expert witness, the evidence in the record presented by the Plaintiff changed. That is, according to Defendant,

**MEMORANDUM DECISION AND ORDER - 3**

Mr. Dawson's recent opinions "changed the course and scope of the case because certain factual questions no longer exist." *See* Mem. in Supp. of Def.'s Mot. to Am. Sched. Order, p. 2 (Docket No. 95, Att. 1). More precisely, Defendant contends that certain factual disputes no longer exist, because Plaintiff's new expert finds no fault as to certain matters, as to which Plaintiff's prior expert did find fault upon. Because (1) such revised circumstances only became known to Defendant *after* the dispositive motion deadline had passed, and (2) Defendant diligently sought leave to move for summary judgment based upon Mr. Dawson's opinions, good cause exists to grant a corresponding amendment to the Court's Scheduling Order.

In allowing Defendant to file another motion for summary judgment based upon this new evidence, the Court does not address the substantive arguments raised within Defendant's already-filed Motion for Summary Judgment. Plaintiff will have the opportunity to respond to such arguments, pursuant to the briefing schedule outlined below.

**B.      Plaintiff's Motion for Leave to Designate Substitute Expert Witness (Docket No. 99)**

There is no question that, following Mr. Walker's death, Plaintiff's original request to extend the time to (re)disclose its insurance claims-handling expert met the good cause standard. However, the present request to name yet another expert is quite different.

Relevant here, Plaintiff's counsel argues that, despite his efforts to secure Mr. Dawson's expert report by September 9, 2012 (15 days before the September 24, 2012 deadline) and, later, by September 21, 2012 (4 days before the September 24, 2012 deadline), Mr. Dawson did not produce the report until September 24, 2012, "leaving [Plaintiff's counsel] with no option but to produce it . . . .," presumably without Plaintiff's or Plaintiff's counsel's full review and/or substantive input. *See* Schoppe Decl. at ¶¶ 4-7 (Docket No. 99, Att. 3). Rather than stipulate

**MEMORANDUM DECISION AND ORDER - 4**

with Defendant's counsel to a brief extension or formally move this Court to extend the September 24, 2012 deadline, Plaintiff's counsel "planned to address any of the Defendant's challenges to [Mr. Dawson's] report in a rebuttal report and via deposition and/or trial testimony." *See id*. at ¶ 7.  Such a blind, "wait and see" approach is not the appropriate course of action, particularly when understanding that Defendant ultimately undercut that strategy by drawing upon Mr. Dawson's report as grounds for seeking summary judgment.

Only *after* Defendant expressed an intent to move for summary judgment (more than a month after disclosing Mr. Dawson as Plaintiff's insurance claims-handling expert, and less than a month before the now-vacated December 3, 2012 trial date) did Plaintiff seek to replace Mr. Dawson.  In other words, from the Court's perspective, it was the threat imposed by a motion for summary judgment that prompted Plaintiff to pursue the relief he now seeks; until then, Plaintiff was arguably content with having Mr. Dawson serve as his expert as evidenced by the lack of any effort to replace Mr. Dawson and/or remedy his opinions.  Under such circumstances, it cannot be said that Plaintiff was diligent in his efforts to resolve whatever issues existed with Mr. Dawson leading up to this point.  Accordingly, good cause does not exist to amend the scheduling order to allow Plaintiff to designate a substitute insurance claims-handling expert.

Additionally (and practically speaking), Plaintiff's request closely resembles a case of "buyer's remorse."  Simply put, Plaintiff regrets hiring Mr. Dawson – an expert who (for whatever reason) apparently did not initially opine in a manner that Plaintiff would prefer.  *See* Schoppe Decl. at ¶¶ 10-11 (Docket No. 99, Att. 3) ("During the course of that conference, it became apparent that Dawson had either not carefully read the Backups or GF & C insurance policies or other materials with which he had been provided or that he had made some mistake,

**MEMORANDUM DECISION AND ORDER - 5**

as he at first insisted that there was no coverage under the Backups or GF & C policies and that the particular special coverage implicated in all three of these cases did not appear on the declarations pages of those policies.  By the end of our conversation, however, Dawson acknowledged that the policies did in fact offer the coverage and agreed that Hartford had acted improperly in denying all of the Plaintiffs' claims under its "all risk" policies with their companies.").  A party's dissatisfaction with their expert's opinions and/or an expert's lack of regular and timely communication is an unfortunate circumstance, to be sure.  However, it cannot serve to re-calibrate the litigation (at the Court's and Defendant's expense).

      A party's choice upon which expert to hire for assistance in a lawsuit is just that – a choice.  Sometimes the results of those choices go smoothly and successfully. Sometimes they do not.  However, the timely progression of a lawsuit cannot turn on whether a party is fully satisfied with the particular choice of an expert.  Those are decisions, including the due diligence necessary to guard against difficulties arising from such decisions, that must be made by parties within the scheduling time-frames imposed by the Court.  If an expert is unavailable to testify at trial because of death, such as first happened with Plaintiff's case, that is a legitimate and appropriate reason for allowing a new expert to be named, even after deadlines for doing so have passed.  If a party's relationship with an expert becomes difficult, and leads to some regret that someone else had not been hired instead, that is a problem of the party's own making, and not a proper basis to further delay the case.

      Having said all this, this Memorandum Decision and Order does not operate to preclude Plaintiff from using Mr. Dawson at trial, subject to whatever constraints that may exist pursuant to the applicable rules moving forward.

**MEMORANDUM DECISION AND ORDER - 6**

### III.  ORDER

For the foregoing reasons, it is HEREBY ORDERED that (1) Defendant's Motion to Amend Scheduling Order (Docket No. 95) is GRANTED, and (2) Plaintiff's Motion for Leave to Designate Substitute Expert Witness (Docket No. 99) is DENIED.  Plaintiff shall respond to Defendant's Motion for Summary Judgment (Docket No. 96) within 14 days of this Order.



DATED:  **December 6, 2012**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 7**