UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL W. CRANDALL,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>HARTFORD CASUALTY INSURANCE COMPANY, and HARTFORD STEAM BOILER INSPECTION & INSURANCE COMPANY,<br><br>　　　　Defendants. | Case No.: CV 10-00127-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 96)** |

Now pending before the Court is Defendant Hartford Casualty Insurance Company's ("Hartford") Motion for Summary Judgment (Docket No. 96). Having carefully reviewed the record and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order:

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff brings this lawsuit as the "legal assignee of claims" for CatRisk.us, LLC ("CatRisk"),[1] an Idaho limited liability company providing electronic medical billing services to small physician practices in several states. *See* Pl.'s Compl, pp. 1-2 (Docket No. 1). Leasing virtual hard drive space owned by Backups Plus Computer Services ("Backups"), CatRisk performed these services entirely over the internet, using computer network technologies to communicate with its medical, insurance, and governmental clients/subscribers. *See id*. at p. 2.

---

[1] Throughout this Memorandum Decision and Order, references to "Plaintiff" include both Plaintiff Daniel W. Crandall and CatRisk.

**MEMORANDUM DECISION AND ORDER - 1**

To insure the risk of a computer system failure, CatRisk purchased a "Special Multi-Flex Spectrum Policy" (the "Policy") from Defendant Hartford Casualty Insurance Company ("Hartford"), effective on May 1, 2008. *See id*.

Plaintiff alleges that on May 21, 2009, CatRisk suffered a sudden and catastrophic mechanical breakdown, resulting in the total loss of computer functions. *See id*. at pp. 3 & 7. Functionality was restored eight days later and CatRisk was able to resume business operations. *See id*. Plaintiff reported the incident to CatRisk's insurer, Hartford, and, on June 3, 2009, Plaintiff submitted a formal claim for losses and damages. *See id*. at p. 7. In a July 15, 2009 letter, Defendant Hartford denied Plaintiff's claim. *See id*.

As a result of Hartford's denial of coverage, Plaintiff originally asserted the following claims: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) negligent misrepresentation; (4) punitive damages; and (5) negligent infliction of emotional distress. *See id*. at pp. 8-14. Plaintiff brought these claims against both Hartford and Hartford's reinsurer, Hartford Steam Boiler Inspection and Insurance Company ("HSB").[2]

On February 25, 2011, Hartford and HSB moved for summary judgment, arguing, first, that Plaintiff's claims fail because CatRisk, as the named insured, is the real party in interest and that any assignment of CatRisk's claims to Plaintiff was invalid; second, that Plaintiff's claims for negligent infliction of emotional distress, lost compensation, and losses on investment in CatRisk should be dismissed because CatRisk, as the named insured, is incapable of holding

---

[2] Plaintiff claimed that HSB reinsured Hartford for 100% of CatRisk's alleged losses and that Hartford delegated the investigation of CatRisk's claim to HSB. *See* Pl.'s Compl., pp. 12-13 (Docket No. 1). Because HSB "conducted the claims investigation and is the ultimate risk-bearer," Plaintiff asserted that a "special professional relationship" between CatRisk and HSB exists to warrant naming HSB as a co-Defendant "even without privity to the reinsurance agreement." *See id*. at p. 13.

**MEMORANDUM DECISION AND ORDER - 2**

such claims; third, that Plaintiff's remaining claims for damages are speculative, unrelated to any duties owed by either Hartford or HSB, and amount to improper claims for prospective economic advantage; fourth, that Plaintiff's claim for punitive damages is procedurally defective; fifth, that Plaintiff's negligent misrepresentation claim is not recognized under Idaho law; and, finally, that Plaintiff's contract claims against HSB must be dismissed because HSB was not a party to the Policy at issue in this action. *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 1 (Docket No. 36, Att. 1).

On August 22, 2011, this Court granted, in part, and denied, in part, Defendants' Motion for Summary Judgment. Specifically, the undersigned found that (1) as a matter of law, it could not be said that either no assignment between CatRisk and Plaintiff ever existed or, similarly, no such assignment currently exists (*see* 8/22/11 MDO, pp. 4-6 (Docket No. 59); (2) Plaintiff's claim for negligent infliction of emotional distress was without merit (*see id.* at pp. 8-10); (3) Plaintiff could not recover for (a) "lost compensation" damages, (b) damages for "loss on investment in CatRisk," (c) damages for "loss on investment in Physicians Billing and Support Services, Inc.," (d) damages for "loss on investment in Moore Support Services, Inc.," and (e) damages for "loss on accounting services" (*see id.* at pp. 10-17); (4) Plaintiff's claim for punitive damages was procedurally improper (*see id.* at p. 18);[3] (5) Plaintiff's claim for negligent misrepresentation was without merit; and (6) HSB should be dismissed (*see id.* at pp. 19-20).

From the Court's perspective, by granting Defendants' Motion for Summary Judgment as to the damages sought by Plaintiff's damages expert (*see supra*), a question arose as to Plaintiff's

---

[3] Plaintiff eventually *moved* to amend his Complaint to assert a claim for punitive damages in accordance with Idaho law. *See* Pl.'s § 6-1604 Mot. for Hearing on Pun. Damages (Docket No. 44). On March 12, 2012, this Court denied that motion. *See* 3/12/12 MDO (Docket No. 75).

ability to recover *any* damages relating to Plaintiff's remaining causes of action – that is, if no damages could be obtained, the action logically ought to be dismissed in its entirety; on the other hand, if damages were still available to Plaintiff, the action would proceed forward. To help answer this question, the Court's August 22, 2011 Memorandum Decision and Order requested the parties to comment upon the status/viability of the action:

> In light of this Memorandum Decision and Order, on or before August 30, 2011, the parties are to notify the Court concerning the status of the action – specifically, whether Defendants' Motion for Summary Judgment resolves the claims raised in the underlying Complaint. Unless otherwise notified, the Court will vacate any pending deadlines and enter a corresponding judgment, consistent with this Memorandum Decision and Order.

*See id*. at pp. 21-22. What followed was disagreement between the parties about the resulting posture of the case. *Compare* Pl.'s Notice (Docket No. 60) and Pl.'s Supp. to Notice (Docket No. 62) *with* Defs.' Notification (Docket No. 61) and Defs.' Notification (Docket No. 65).

The sum of such submissions from the parties illustrated the quandary left before the Court following its ruling on Defendant's February 25, 2011 Motion for Summary Judgment. Ultimately, the parties' submissions did not persuade the Court that there had been resolution of the question of whether *other* damages (beyond those already identified by Plaintiff's expert) were available to Plaintiff on any claims that were not specifically dismissed by the Court's August 22, 2011 Memorandum Decision and Order. With all this in mind, the Court invited Hartford (HSB having since been dismissed) to, once again, move for summary judgment, based upon a discrete, updated record, detailing their arguments in favor of a complete resolution of the action in its favor. *See* 11/16/11 Notice, p. 5 (Docket no. 66) ("Therefore, while it may be viewed as inefficient given all that has transpired thus far, the Court requests that, if [Hartford] contend[s] that Plaintiff is wholly incapable fo recovering any amount of damages on any

**MEMORANDUM DECISION AND ORDER - 4**

remaining causes of action, it so move for summary judgment in this limited respect.  Only after such arguments are squarely before the Court can Plaintiff respond accordingly and, as such, position this Court to 'settle the pond' on this issue . . . .").

On December 2, 2011, Hartford filed a second Motion for Summary Judgment, arguing that "Plaintiff cannot show the existence of evidence to support damages, which is an essential element of his claims for breach of contract and breach of the covenant of good faith and fair dealing against [Hartford]."  *See* Def.'s Mot. for Summ. J., p. 1 (Docket No. 67).  In essence, the lynchpin issue was whether Plaintiff was injured/damaged by Hartford's alleged breach of contract.  If so, the action would proceed; if not, the action would come to a close.

On February 27, 2012, this Court denied Hartford's December 2, 2011 Motion for Summary Judgment.  Given the multiple communications discussing Plaintiff's alleged damages that occurred prior to the filing of the lawsuit, the Court could not conclude as a matter of law that Plaintiff was not so damaged.  *See* 2/27/12 MDO, p. 10 (Docket No. 72) (discussing June 3, 2009 letter to Hartford identifying alleged losses (distinct from those losses already found to be unrecoverable (*see supra*)) that Plaintiff claims are recoverable under existing breach of contract and breach of implied covenant of good faith and fair dealing causes of action).[4]

The Court then set a July 16, 2012 trial date (*see* 4/24/12 Order Setting Trial (Docket No. 81) which was later vacated and re-set for August 27, 2012 upon the parties' June 19, 2012

---

[4] Although denying Hartford's December 2, 2011 Motion for Summary Judgment, the undersigned cautioned Plaintiff that his damages are not forever insulated from any pre-trial attack on their admissibility.  *See* 2/27/12 MDO, p. 10 (Docket No. 72) ("That is, the Court perceives potential procedural arguments in favor of excluding evidence of Plaintiff's alleged damages when Plaintiff's initial disclosures, discovery responses, and testimony during deposition as to his expert's role in calculating damages may have compromised Plaintiff's ability to even *claim* damages in the context of the remaining claims of the lawsuit.") (emphasis in original).

**MEMORANDUM DECISION AND ORDER - 5**

stipulated motion. *See* 6/20/12 Order (Docket No. 87). On August 6, 2012, Plaintiff moved to vacate the August 27, 2012 trial date due to the unexpected death of his insurance claims-handling expert witness, William Walker. *See* Pl.'s Mot. to Vacate and Continue Trial (Docket No. 88). Hartford did not oppose Plaintiff's motion (*see* Def.'s Not. of Joinder (Docket No. 89)) and, on August 14, 2012, this Court vacated the August 27, 2012 trial date. *See* 8/14/12 DEO (Docket No. 90). Following an August 20, 2012 status conference, the Court outlined the deadline for Plaintiff to disclose his replacement expert opinion, and also re-set the trial date for December 3, 2012. *See* 8/20/12 Order Re-Setting Trial (Docket No. 92).

Following Plaintiff's disclosure of Kevin K. Dawson as his replacement witness for the late Mr. Walker, on October 29, 2012, Hartford moved to amend the scheduling order to allow it to file a third motion for summary judgment. *See* Def.'s Mot. to Am. Sched. Order (Docket No. 85). According to Hartford, Mr. Dawson's expert opinion changed the pretrial landscape so as to provide a new, previously unavailing, basis for summary judgment. *See* Mem. in Supp. of Def.'s Mot. to Am. Sched. Order, p. 2 (Docket No. 95, Att. 1). More precisely, Hartford argued that certain arguable factual disputes no longer existed because Plaintiff's new expert, Mr. Dawson, found no fault as to certain matters which Plaintiff's previous expert, Mr. Walker, did find fault upon.

Because (1) such revised circumstances only became known to Hartford *after* the dispositive motion deadline had passed, and (2) Hartford diligently sought leave to move for summary judgment based upon Mr. Dawson's opinions, good cause existed for the Court to grant a corresponding amendment to the then-existing Scheduling Order, and permit Hartford to

**MEMORANDUM DECISION AND ORDER - 6**

file a third motion for summary judgment – the matter now at issue before this Court. *See* 12/6/12 MDO, p. 4 (Docket No. 108).[5]

Through its latest Motion for Summary Judgment, Hartford argues that the Policy's (and the Computers and Media Endorsement's) plain and unambiguous language demonstrates that Plaintiff's remaining claims – breach of contract and breach of implied covenant of good faith and fair dealing – are substantively without merit (independent of Hartford's previous attack on Plaintiff's ability to recover any damages (*see supra*)). *See* Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 1-16 (Docket No. 96, Att. 1). According to Hartford, this is particularly the case when further considering that (1) Policy coverage requires that there be "physical damage," and (2) Mr. Dawson has already "acknowledg[ed] a proper denial of the claim of physical damage to the hard drives." *See id*. at p. 9.

## II. DISCUSSION

### A. Motion for Summary Judgment: Standard of Review

Summary judgment is used "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but rather is "the principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

[5] In the meantime, to accommodate the briefing needed to address Hartford's request to file another dispositive motion, the December 3, 2012 trial date was vacated and re-set for March 4, 2013. *See* 11/08/12 DEO (Docket No. 102) and 1/4/13 Am. Order Setting Trial (Docket No. 110). Finally, upon Hartford's unopposed Motion, the March 4, 2013 trial date was vacated and re-set for March 11, 2013. *See* 1/10/13 Order Re: Mot. to Change Trial Date (Docket No. 115).

**MEMORANDUM DECISION AND ORDER - 7**

judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

However, the evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party (*see id*. at 255) and the Court must not make credibility findings. *Id*. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show "by [its] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d

**MEMORANDUM DECISION AND ORDER - 8**

885, 889 (9th Cir. 2003). A statement in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389 n. 3 (9th Cir. 1995).

B. **Standard for Interpreting Insurance Contracts**

Generally, Idaho courts construe insurance contracts in accordance with their plain, unambiguous language; but where the insurance contract is ambiguous, it must be construed in a light most favorable to the insured and in a manner providing full coverage for the indicated risks, rather than narrowing its protection. *See Axis Surplus Ins. Co. v. Lake CDA Dev.*, 2008 WL 4238966, *2 (D. Idaho 2008) (citing *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 115 P.3d 751 (Idaho 2005)). "In construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities." *Id*. This determination is a question of law for the Court, and the Court must construe the insurance policy as a whole, not by isolated phrases. *Id*.

Like other contracts, insurance policies are ambiguous if they are reasonably subject to conflicting interpretations. *Id*. If so, the meaning is controlled by the underlying intent of the parties. *See Mintun v. Blades*, 2008 WL 711636, *16 (D. Idaho 2008) (citing *Navarette v. City of Caldwell*, 949 P.2d 597 (Idaho Ct. App. 1997)). Intent is a question of fact, to be determined by the factfinder; in contrast, if a contract is unambiguous, the determination of the contract's meaning and legal effect is a question of law. *Id*.

"The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage and exclusions not stated with specificity will not be presumed or inferred. *See Axis* 2008 WL 4238966 at *2 (quoting *Clark v. Prudential Prop. and Cas. Ins. Co.*, 66 P.3d 242, 245 (Idaho 2003)). However, standardized contract language must necessarily be somewhat

**MEMORANDUM DECISION AND ORDER - 9**

general, in anticipation of varying circumstances of the facts. *See Axis* 2008 WL 4238966 at *2 (citing *Foster v. Johnstone*, 685 P.2d 802, 806 (Idaho 1984)). "[W]here the policy language is clear and unambiguous, coverage must be determined as a matter of law, according to the plain meaning of the words used." *See Axis* 2008 WL 4238966 at *2 *(*quoting *Cascade*, 115 P.3d at 754 (internal citation and quotation omitted)).

Assuming no ambiguity, the insured has the initial burden of proving by a preponderance of the evidence that its claim is covered by the insurance contract. *See Lakeland True Value Hardware, LLC v. Hartford Fire Ins. Co.*, 291 P.3d 399, __ (Idaho 2012) (citing *Miller v. Belknap*, 266 P.2d 662, 665 (Idaho 1954)); *see also* 17A Couch on Ins. § 254:11. If the insured cannot meet this burden, there is no coverage in the first instance. If the insured meets that burden, the burden shifts to the insurer to prove facts that bring the claim within an exclusionary clause of the insurance contract. *See Perry v. Farm Bureau Mut. Ins. Co. of Idaho*, 936 P.2d 1342, 1345 (Idaho Ct. App. 1997); *see also* 17A Couch on Ins. § 254:12.

**C.     The Policy Alone Does Not Provide Coverage For Plaintiffs' Alleged Losses**

As is the case with many insurance policies, the at-issue Policy represents a sometimes byzantine road-map to answer the question of whether coverage exists (and, thus, forming the necessary basis for Plaintiff's remaining claims). For example, certain "Business Personal Property" is considered "Covered Property" (*see* Policy at p. 1, § (A)(1)(b) (Docket No. 96, Att. 3); but "Covered Property" does not include "'[d]ata' and 'software' which exists on electronic 'media' including the cost to research, replace[,] or restore them . . . . (*see id.* at p. 2, § (A)(2)(i)). Even so, (1) "Additional Coverages" encompass an "Equipment Breakdown" (*see id.* at p. 4, § (A)(5)(c)), while (2) "Coverage Extensions" apply to "Data and Software" (*see id.* at p. 14,

**MEMORANDUM DECISION AND ORDER - 10**

§ (A)(6)(c)).  Pointing to these provisions and their subparts (or explaining them away, as the case may be), both Plaintiff and Hartford spend a considerable amount of their briefing addressing whether the Policy covers Plaintiff's alleged losses.  *Compare* Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 4-8 (Docket No. 96, Att. 1) *with* Pl.'s Opp. to Mot. for Summ. J., pp. 11-14 (Docket No. 109).

However, even when *assuming* that Plaintiff established a *prima facie* case (that is, the claims relate to covered property that experienced direct physical loss caused by a covered cause of loss under the Policy[6] (*but see infra* (discussing potential hurdles for even finding covered property and a finding of physical loss under the Policy))), Plaintiff must still contend with the exclusions that exist under the Policy.  *See, e.g.*, Policy at p. 2, § A(3)(a) (Docket No. 96, Att. 3) (discussing "Covered Causes of Losses" as "RISKS OF DIRECT PHYSICAL LOSS *unless* the loss is [e]xcluded in Section B., EXCLUSIONS . . . .") (capitalization in original, italics added).  Here, Hartford argues that Plaintiff's losses are excluded under the Policy and, therefore, Plaintiff's remaining claims for breach of contract and breach of implied covenant of good faith and fair dealing must fail.  *See* Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 8-15 (Docket No. 96, Att. 1).  The undersigned agrees.

---

[6] This assumption presupposes that Plaintiff's losses extend beyond, simply, data loss – something the Policy expressly does not cover.  *See supra*.  Addressing this point, Plaintiff seems to suggest that CatRisk's claims are not for data loss *per se* but rather for being unable to use Backups' damaged hard drives.  According to Plaintiff, "CatRisk 'controlled' the hard drives by virtue of its ability to read, write, and/or delete data in a portion of Backups' hard drives . . . ."  *See* Pl.'s Resp. to Mot. for Summ. J., p. 14 (Docket No. 109).  This level of "control," Plaintiff's argument goes, represents "property of others that is in your care, custody or control" and, thus, is "Business Personal Property" and covered under the Policy.  *See id*. (citing Policy at p. 1, § (A)(1)(b)(3)).  Therefore, consistent with the Court's assumption, even if Plaintiff's characterization of CatRisk's losses is true, the Policy may still not provide coverage if an exclusion exists.

**MEMORANDUM DECISION AND ORDER - 11**

Among other things, the Policy excludes from coverage "physical loss or physical damage caused by or resulting from . . . wear and tear . . . ." *See* Policy at p. 17, § (B)(2)(c)(1) (Docket No. 96, Att. 3). In this respect, Hartford points out that, in analyzing HSB's coverage obligations to Hartford (*see supra*), LWG, Inc. ("LWG"), a separate consulting firm hired to inspect the hard drives after the May 21, 2009 incident, found no evidence of a head crash or any other type of mechanical breakdown that might otherwise result in coverage. *See* Def.'s Mem. in Supp. of Mot. for Summ. J., p. 9 (Docket No. 96, Att. 1). Instead, LWG reported that "[n]o physical damage was identified" within the inspected hard drives and that "[t]he cause of the bad sectors is related to normal wear and tear." *See* 7/7/09 Ltr. from Scott to Brody at pp. 3-4, attached as Ex. 9 to Schoppe Decl. (Docket No. 109, Att. 2). Hartford in turn denied CatRisk's claim, stating that "the fact that the cause of loss was due to wear and tear thus causes this claim to be excluded under the [P]olicy." *See* 7/15/09 Ltr. from Prause to Crandall at pp. 2-3 (Docket No. 96, Att. 5).

Plaintiff has repeatedly assailed LWG's findings of wear and tear, but never with any equivalent expert assessment. The LWG findings have taken on greater significance in light of the report of Plaintiff's own expert, Mr. Dawson. Mr. Dawson acknowledges a proper denial of the claim of physical damage to the hard drives under the HSB coverage – which, for these purposes, speaks to the Policy as well. *See* Dawson Rpt. at p. 2 (Docket No. 96, Att. 5) ("Notwithstanding the proper denial under the [HSB] coverage . . . .").[7] In other words, Plaintiff

---

[7] Mr. Dawson goes on to opine that, while coverage may not exist under the HSB coverage (and, therefore, the Policy here), "a reasonable interpretation of this risk would have found coverage under the first party property form, specifically, the computers and media coverage grant." *See* Dawson Aff. at ¶ 9 (Docket No. 96, Att. 5). The Computers and Media Endorsement is discussed later in this Memorandum Decision and Order.

**MEMORANDUM DECISION AND ORDER - 12**

has no other technical expert available to testify on the issue of coverage and, as a result, no expert who will testify (1) to the existence of physical loss or physical damage under the Policy, (2) to the actual cause of the alleged loss, and/or, relatedly, (3) that the cause of the bad sectors related to something other than normal wear.

Having said this, the Court is mindful of Plaintiff's argument (both in the context of the instant Motion for Summary Judgment and as raised in connection with the prior motion practice in this case) which challenges the LWG wear and tear opinion. Plaintiff argues that such a conclusion is not supportable for the reason that the expected useful life of the hard drive in question had not been reached. The Court agrees that the fact that the hard drive failed before the end of its useful life does call into question a conclusion that its failure stemmed from wear and tear. And, if the LWG examination and assessment of the reason for the hard drive failure had been an unsupported conclusion that wear and tear was responsible, then the Court might be persuaded that a genuine issue of material fact existed as to whether or not wear and tear was the reason for the failure (and therefore also the basis for applying the wear and tear exclusion under the Policy.) However, the record contains much more, as LWG's reports that are in the record identify a sensible explanation for the fact of wear and tear, and further offer a sensible explanation for why the alternative possible mode of failure – a crash of the hard drive – was not supportable.

In that regard, LWG makes these observations, which are otherwise unrebutted in the record[8]:

---

[8] There is room, to be sure, for a common-sense argument that wear and tear ordinarily would not be expected to cause the failure of a hard drive that had not yet reached the end of its expected useful life. But in this case, there is both an explanation from LWG as to why the

**MEMORANDUM DECISION AND ORDER - 13**

- LWG inspected the internal components of the hard drives supplied to them by Plaintiff, "open[ing] the [hard drives] to determine if a head crash, as claimed by the insured and the insured's service vendor, had occurred." *See* 7/7/09 Ltr. from Scott to Brody at p. 2, attached as Ex. 9 to Schoppe Decl. (Docket No. 109, Att. 2).[9]

- LWG's inspection of the provided hard drives' interior components "[did] not identify any evidence of a head crash" but did conclude that the cause of Plaintiff's hard drive's failure was related to bad sectors. *See id.* ("Normally when a read/write head experiences a head crash, there is a failure of that device. Because there is no damage consistent with the claimed head crash, LWG must conclude that the damage is related to normal wear and tear.").

- According to LWG, "[b]ad sectors are identified primarily when a sector on the [hard drive] is not able to store data any longer" and is "most often caused by the degradation of the magnetic layer or physical damage sustained by a head crash." *See* 6/16/09 Ltr. from Scott to Brody at p. 4, attached as Ex. 9 to Schoppe Decl. (Docket No. 109, Att. 2). Further, even "[b]rand new [hard drives] from the manufacturer already have mapped bad sectors . . . caused either by the manufacturing process, handling of the device, and/or degradation of the magnetic layer of the platter over a period of time." *See id.*

- Plaintiff's data recovery vendor was able to image the hard drive in its data recovery efforts, meaning that some portion of the hard drive was still able to read and write to sectors that were not "bad." *See id.* at p. 5. Had there been a head crash, "there would be significantly more operational errors than what has been identified." *See id.*

- Thus, because LWG concluded that the errors experienced by the hard drive "related to a degradation of the magnetic layer of the platter" independent of a head crash, LWG was left to conclude that such a failure related to wear

---

"useful life" measure is not a black and white line, and there is further explanation of other facts that point to wear and tear as the cause of failure and point away from a head crash. Yet, Plaintiff has offered no expert evidence to challenge the LWG findings.

[9] Plaintiff's service vendor, Total Access Data Recovery ("Total Access"), never actually opened the examined hard drives. *See* 7/7/09 Ltr. from Scott to Brody at pp. p. 3, attached as Ex. 9 to Schoppe Decl. (Docket No. 109, Att. 2). Therefore, Total Access could not have made an examination for evidence of a head crash. Moreover, Total Access first identified the failure of the hard drives "as related to firmware issues and bad sectors" with no mention of a head crash as the cause of the failure. *See id.*

**MEMORANDUM DECISION AND ORDER - 14**

>and tear. *See id*; *see also See* 7/7/09 Ltr. from Scott to Brody at p. 4, attached as Ex. 9 to Schoppe Decl. (Docket No. 109, Att. 2) ("Therefore, since LWG has actually opened the HDD and observed all of the factors involved in the failure of the [hard drive] there is no choice but to conclude that the drive failed die to wear and tear. They [Total Access] may feel that the failure is premature but it is still related to wear and tear experienced from normal operation of the [hard drive].

These findings by LWG more than meet Hartford's burden of proof upon the application of a Policy exclusion, and place the line in the dispositive motion sand that Plaintiff must cross in order to resist summary judgment. But Plaintiff's only response to oppugn those findings is the supposition (echoing the recovery service vendor) that such wear and tear is implausible where the equipment's expected useful-life had not been reached. To construct a genuine issue of fact on this issue, Plaintiff must come forward with more evidence than such a supposition and Plaintiff has not done so.

Again, the Court does not conclude here, as a matter of law, that Plaintiff's claims involve covered property that experienced direct physical loss caused by a covered cause of loss under the Policy. Rather, even when *assuming* that much to be true, an exclusion applies that prevents coverage under that same Policy – that of wear and tear. Because Plaintiff offers no evidence sufficiently calling into question LWG's findings as to the issue of wear and tear,[10]

---

[10] Plaintiff argues that LWG, after issuing its report concluding that the cause of the bad sectors related to normal wear and tear, LWG contradicted itself by saying that "the only interaction that will provide a bad sector is the operation between the read/write head and the platter." *See* Pl.'s Opp. to Mot. for Summ. J., pp. 3 & 6 (Docket No. 109). However, this statement was made in response to a query relating to whether the loss could have been related to a computer virus (it could not) and does not undercut the overall conclusions LWG reached just two days prior. *See* 7/9/09 e-mail from Mathew to Prause, attached as Ex. 3 to Schoppe Decl. (Docket No. 109, Att. 2). Additionally, Plaintiff claims that LWG again contradicted itself by saying that it could not tell "what caused the sectors to go bad in this case" without conducting a "microscopic analysis of the drive." *See* Pl.'s Opp. to Mot. for Summ. J., p. 3 & 6-7 (Docket No. 109). Except, such a isolated statement misses the point when recognizing that, as stated in the balance of the at-issue e-mail, the microscopic analysis would only assist in determining what caused the "wear and tear to the drive." *See* 7/9/09 e-mail from Prause to Brody, attached as Ex.

**MEMORANDUM DECISION AND ORDER - 15**

there is no genuine dispute of material fact that prevents a finding that the Policy alone does not provide coverage for Plaintiff's alleged losses.

Still, to fully address whether coverage exists here, the Computers and Media Endorsement must also be examined.

**D.  The Computers and Media Endorsement Does Not Provide Coverage For Plaintiffs' Alleged Losses**

The Policy was modified by the "Computers and Media" Endorsement,[11] which provided coverage for "Computer Equipment" (*see* Endorsement at p. 1, § (A) (Docket No. 96, Att. 4)), "Data and Software" (*see id*. at p. 2, § (B)), and "Additional Coverages" for "Business Income Coverage" (*see id*. at p. 2, § (C)(1)) and "Equipment Breakdown Coverage" (*see id*. at p. 2, § (C)(2)). However, even when again *assuming* that Plaintiff established a *prima facie* case (that is, the claims relate to covered property that experienced direct physical loss caused by a covered cause of loss under the Computers and Media Endorsement), there is no coverage if an exclusion applies. Here, the Computers and Media Endorsement removes many exclusions found in the Policy (*see id*. at p. 3, § (E)(1)(a)-(e)), only to later add certain exclusions, *including* "wear and

---

4 to Schoppe Decl. (Docket No. 109, Att. 2). That is to say, the e-mail confirms the existence of wear and tear, albeit not necessarily the cause of that wear and tear. This is borne out by Mr. Brody's subsequent e-mail to Mr. Prause where Mr. Brody states: "We are told that the hard disk drives did not suffer any physical damage and these further tests would not provide with anymore detailed information to cause us to change our position." *See* 7/10/09 e-mail from Brody to Prause, attached as Ex. 4 to Schoppe Decl. (Docket No. 109, Att. 2). Plaintiff argues that Hartford could have done more by way microscopic analyses. But this argument also does not rise to the level of creating an issue of fact relative to Plaintiff's underlying breach of contract claim, when contrasted against the lack of evidence offered by Plaintiff to support a conclusion that the wear and tear exclusion does not apply. Simply put, more is needed.

[11] It appears the "Super Stretch for Technology and Software Service Providers" Endorsement also applies. According to Hartford, "Mr. Dawson only mentions this endorsement when talking about limits of insurance, not in discussing coverage." *See* Def.'s Mem. in Supp. of Mot. for Summ. J., p. 10 (Docket No. 96, Att. 1). Plaintiff does not dispute such a characterization

**MEMORANDUM DECISION AND ORDER - 16**

tear" (*see id.* at p. 3, § (E)(2)(g)).[12] For the same reasons already discussed above, LWG's unrebutted finding that the cause of the bad sectors related to normal wear and tear (rather than, say, a head crash) precludes coverage under the Computers and Media Endorsement as well.[13]

E.  **Absent Coverage Under Either the Policy or the Computers and Media Endorsement, Plaintiff's Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing Must Fail**

Plaintiff's breach of contract claim is premised upon the existence of coverage via the underlying Policy and/or the Computers and Media Endorsement. Because there is no coverage (*see supra*) there necessarily can be no breach of contract here. Further, absent coverage, there is no basis for Plaintiff's breach of implied covenant of good faith and fair dealing claim. *See Purdy v. Farmers Ins. Co. of Idaho*, 65 P.3d 184, 192 (Idaho 2003) ("Because our holding that

---

[12] On this point, Mr. Dawson opines that Hartford "cited exclusions that are deleted under the Computer and Media [Endorsement]" and that "[s]ince Hartford has stated exclusions that do not apply, we are left to believe that this all-risk form subject to exclusions has no applicable exclusions and, as a result, coverage is granted." *See* Dawson Rpt. at p. 9 (Docket No. 96, Att. 5). It appears as though Mr. Dawson either overlooked or did not consider the Computers and Media Endorsement's "Additional Exclusions" subpart, unambiguously stating that Hartford "will not pay for loss or damage caused by or resulting from . . . wear and tear . . . ." *See* Endorsement at p. 3, § (E)(2)(g). This exclusion was clearly referenced in Hartford's denial letter as a basis for denying coverage here. *See* 7/15/09 Ltr. from Prause to Crandall at p. 4 (Docket No. 96, Att. 5) ("As LWG found the failure of the hard drives to be the result of wear and tear and/or latent defect of the drives, which are specifically excluded, and not due to a mechanical breakdown, headcrash or equipment breakdown, as reported, there is no coverage for your data restoration costs, and your claim will be closed without payment.").

[13] As to the Court's assumptions relating to its analyses of coverage under both the Policy and the Computers and Media Endorsement, the Court recognizes the potential inconsistency in presupposing a covered loss only to find the wear and tear exclusions to apply – that is, if wear and tear led to the claimed loss, how can the loss be covered in the first place? Any oddity in this respect highlights only the possibility that, in fact, a covered loss may not exist in the first instance, particularly in light of LWG's findings, coupled with the absence of evidence in the record to the contrary. The Court, however, makes no formal finding here upon that issue.

**MEMORANDUM DECISION AND ORDER - 17**

the Purdy's policy unambiguously provides that there is no coverage under the facts in this case, the Purdy's do not have a claim for bad faith against Farmers Insurance."); *see also Leslie v. J.C. Penney Life Ins. Co.*, 62 P.3d 1101, 1104 (Idaho 2003) ("The jury determined that there was no coverage under the policy. Consequently, the claim of bad faith is moot."); *Robinson v. State Farm Mut. Auto Ins. Co.*, 45 P.3d 829, 838 (Idaho 2002) ("Where there is no coverage, e.e., a contractual relationship requiring the company to pay an insured's claim, the tort of bad faith does not lie.") (Walters, J., concurring).

Therefore, Hartford's Motion for Summary Judgment is granted and Plaintiff's remaining claims for breach of contract and breach of implied covenant of good faith and fair dealing are dismissed.

### III. ORDER

Based on the foregoing, it is HEREBY ORDERED that Defendant Hartford Casualty Insurance Company's Motion for Summary Judgment (Docket No. 96) is GRANTED. The March 11, 2013 trial date and pre-trial deadlines are vacated.



DATED: **February 8, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**